Argued and submitted July 2, affirmed September 11, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# STEVEN CHANDLER PETERSON,
*Appellant.*

## CR-00-02-08; A114510

53 P3d 455

Marc T. Andersen argued the cause for appellant. With him on the brief was Foster A. Glass, P. C.

Julie A. Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant appeals from a conviction for driving under the influence of intoxicants, assigning error to the trial court's denial of his motion to dismiss on statutory and constitutional speedy trial grounds. We affirm.

On March 2, 2000, defendant was cited for driving under the influence of intoxicants (DUII). The citation required him to appear for arraignment on April 5, but he did not do so. Instead, on April 14, he filed a motion to waive his appearance and entered a plea of not guilty. At a pretrial hearing on May 23, the court suggested a one-day trial for November 20, 2000. Through his counsel, defendant replied, "November 20th. Okay. That would do it." However, before that date, for reasons that the record does not disclose, the court reset the trial date to December 1. Shortly before *that* date, the prosecution learned that the arresting officer, a necessary witness, would be out of town at a training session, so, on November 15, a deputy district attorney sent defendant's counsel a copy of a motion for a continuance that he intended to file. Defendant's counsel maintains that he never received that mailing. In any event, the motion was filed on November 20, and, on November 27, not having heard an objection from defense counsel, the trial court granted the state's motion and continued the trial until January 4, 2001. Then, on that date, again for reasons that the record does not disclose, the court reset the trial for April 20, 2001. At trial on that date, defendant raised for the first time his objections to the delay. He filed a motion to dismiss, alleging that the 13 months and 18 days' delay between the citation and the trial violated ORS 135.747, the statutory "speedy trial" provision, as well as Article I, section 10, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. The court denied the motion, defendant was convicted and sentenced, and this appeal followed.

If defendant were to prevail on his statutory claim, the state would not be barred from reprosecuting him; DUII is a Class A misdemeanor and, under ORS 135.753, dismissal under ORS 135.747 acts as a bar on reprosecution only for

Class B and C misdemeanors. If he were to prevail on constitutional grounds, however, no reprosecution would be possible. *Strunk v. United States*, 412 US 434, 440, 93 S Ct 2260, 37 L Ed 2d 56 (1973); *State v. Ivory*, 278 Or 499, 505, 564 P2d 1039 (1977). Therefore, deciding the statutory claim would not obviate the need to examine the constitutional claims, which offer more complete relief. Under those circumstances we depart from our usual practice and examine the constitutional claims first. *State v. Harberts*, 331 Or 72, 81, 11 P3d 641 (2000).

■■    Article I, section 10, of the Oregon Constitution, the state charter's "speedy trial" guarantee, *Ivory*, 278 Or at 504, declares that "justice shall be administered * * * without delay." To determine whether the state has failed to meet the terms of that guarantee, the court considers three factors: the length of the delay, the reasons for it, and the extent to which it caused actual prejudice to the defendant. *Harberts*, 331 Or at 88; *State v. Mende*, 304 Or 18, 23-25, 741 P2d 496 (1987). The first factor can be dispositive. If the delay is not "substantially greater than the average," then the state has not violated the constitution and no examination of reasons for the delay or prejudice caused by it is necessary. *Mende*, 304 Or at 23-24. On the other hand, if the delay is so "manifestly excessive" as to "shock[ ] the imagination and the conscience," then the court must dismiss the charges without further inquiry. *Harberts*, 331 Or at 86, 88 (citations omitted). If all factors come into play, the court must evaluate each of them as opposed to engaging in a mechanical balancing process. *Ivory*, 278 Or at 505.

■    In the present case, defendant was cited on March 2, 2000, and came to trial on April 20, 2001, a delay of 413 days. He is responsible for, and thus impliedly consented to, the period between April 5 and April 14, 2000, during which he was on failure-to-appear status. More significantly, he expressly consented to the delay between May 23 and November 20, 2000. On the former date, the trial court suggested a one-day trial on the latter date, and defense counsel replied, "November 20th. Okay. That would do it." Thus, we conclude that the delay to which we apply a "reasonableness" standard is 214 days, or just over seven months. Defendant

concedes that the delay was not manifestly excessive, and the state concedes that it was significantly longer than average. We therefore turn to the other factors.

Of the seven months' delay for which the state is responsible, 34 days resulted from the state's request for a continuance on the ground that the state's key witness would not be available on the date set for trial. Nothing in the record explains the remaining delay. By the same token, however, nothing in the record indicates that the delay was an intentional ploy to hurt defendant's ability to present his case, and defendant makes no such accusation. The Supreme Court has noted that "the unavailability of witnesses is one of the most common causes of delay" and that, although delay for that reason is a fault, "[w]ithin the spectrum of fault, however, the fault is minor." *State v. Dykast*, 300 Or 368, 377, 712 P2d 79 (1985). This court has frequently held that an unintentional delay, even if negligent, does not weigh heavily against the state. *State v. Kirsch*, 162 Or App 392, 399, 987 P2d 556 (1999); *State v. McQueen*, 153 Or App 277, 282, 956 P2d 1046, *rev den* 327 Or 554 (1998); *State v. Wirth*, 114 Or App 496, 499, 835 P2d 952 (1992). We therefore conclude that, in this case, the reasons for delay do not significantly help defendant.

Defendant has the burden to establish "some degree of actual prejudice." *Mende,* 304 Or at 23. Only three kinds of prejudice qualify for consideration in a constitutional speedy trial analysis: excessive pretrial detention, anxiety and concern, and impairment of defense. *Dykast,* 300 Or at 378. Defendant was never incarcerated, nor does he allege an impaired defense. His entire claim of prejudice stems from the fact that the delay in his trial extended the period during which he could not drive; because he refused the Intoxylizer test, his license was administratively suspended for a year, apparently shortly after the citation, and then, when he was convicted of DUII in court, he received an additional one-year suspension. Because he does not (and could not) argue that this suspension is the functional equivalent of incarceration, we take his claim of prejudice to be under the "anxiety and concern" rubric, and, in fact, he asserts that "under the Appellate Court's current analysis, it is apparent that the

Courts are *not* willing to look kindly upon any level of anxiety caused to the defendant where the courts believe the prosecution was not trying to obtain an unfair advantage." He then urges us to "re-examine [our] standard of analysis * * *." We decline that invitation. We recently held that,

> "in instances where (1) there is delay that, while unjustified, does not weigh heavily in the defendant's favor; and (2) the only form of 'prejudice' proven by the defendant is an extension of the ordinary stress and anxiety that accompanies any criminal prosecution, the nominal weight of those factors generally will not overcome the absence of either lengthy pretrial incarceration or meaningful prejudice to the defense."

*State v. Harman*, 179 Or App 611, 620, 40 P3d 1079 (2002) (footnote omitted). We adhere to that reasoning. The state did not violate defendant's right to "justice without delay" under Article I, section 10.

Our analysis of speedy trial claims under Article I, section 10, is the same as the analysis under the Sixth Amendment to the United States Constitution, only the federal analysis considers an additional factor: whether the defendant raised a speedy trial claim below. *Barker v. Wingo*, 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972); *Dykast*, 300 Or at 374. Here, defendant did make a speedy trial argument to the trial court. That fact militates slightly in his favor. On the other hand, he did not make it until the actual day of trial; at no stage before that time did he formally protest. That fact works against him. In short, this factor does nothing to require a different outcome under the United States Constitution from that under the Oregon Constitution.

Finally, we turn to defendant's claim that the court erred in not granting his motion to dismiss under ORS 135.747. That statute provides:

> "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

To determine whether the trial court should have dismissed this case under ORS 135.747, we begin by determining the

extent to which, if at all, defendant "caused or consented to the delay." *Kirsch*, 162 Or App at 395. If there is some delay to which defendant did not consent, we then determine whether it was "reasonable" under the circumstances. *Id.* Consent need not be explicit; for example, a defendant is charged with impliedly consenting to delays caused by his failure to appear. *Id.* at 397; *State v. Hickerson*, 153 Or App 284, 287, 956 P2d 1050 (1998). Whether a particular delay is reasonable is a question of law that we review for legal error. *McQueen*, 153 Or App at 280.

As discussed above, we conclude that the delay to which we apply a "reasonableness" standard is 214 days, or just over 7 months. Although "reasonable," like its cousin "substantial," invites subjective conclusions, it is not a word of infinite elasticity, and, in this case, we have no trouble declaring that a seven-month delay fits within its ambit. Defendant does not cite, and we have not found, a case in which a delay of this length or shorter was deemed so long as to warrant dismissal under ORS 135.747. The Supreme Court has looked to the purely aspirational standard suggested by the Oregon Judicial Conference in 1990, maintaining that "90% of all * * * nonfelony cases should be adjudicated or otherwise concluded within 90 days from the date of arraignment, 98% within 180 days and 100% within one year * * *." *State v. Emery*, 318 Or 460, 471 n 17, 869 P2d 859 (1994). That standard, of course, does not make a seven-month delay ideal or acceptable as a norm, but it does indicate that a delay of that length is not unreasonable. We conclude that the nonconsensual delay in this case was not so unreasonable as to require dismissal. *Cf. State v. Vawter*, 236 Or 85, 96-97, 386 P2d 915 (1963) (delay of seven-and-one-half months did not require dismissal where "no circumstances are shown which indicate that the delay was oppressive or vexatious").

The state did not violate either the United States or the Oregon constitutions, nor did it violate ORS 135.747.

Affirmed.