Submitted July 31, 2008, affirmed February 11, petition for review denied April 22, 2009 (346 Or 184)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**JETHRO E. MYERS,**
*Defendant-Appellant.*

Crook County Circuit Court
04FE0112; A131358

202 P3d 238

Peter Gartlan, Chief Defender, Legal Services Division, and Marc D. Brown, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Inge D. Wells, Senior Assistant Attorney General, filed the brief for respondent.

Before Rosenblum, Presiding Judge, and Brewer, Chief Judge, and Richardson, Senior Judge.

ROSENBLUM, P. J.

## ROSENBLUM, P. J.

Defendant appeals his convictions for assault in the fourth degree and unlawful use of an electrical stun gun. He assigns error to the trial court's denial of his motion to dismiss on speedy trial grounds under ORS 135.747. We conclude that the state bears responsibility for a total of 18 months of the period between defendant's indictment and his trial. Given that all of the delays were explained and, in particular, that most of the total delay is attributable to a lack of judicial resources, we conclude that defendant was brought to trial within a reasonable period of time. Accordingly, we affirm.

The relevant facts are undisputed. On July 9, 2004, defendant entered the victim's residence and assaulted him with an electrical stun gun. Defendant was arrested shortly thereafter. He was released from custody on July 13. On July 15, the state issued an indictment charging one count of burglary in the first degree (a felony), ORS 164.225, one count of assault in the second degree (a felony), ORS 163.175, and one count of unlawful use of a stun gun (a misdemeanor), ORS 163.212. Also on July 15, on defendant's motion for a continuance, the trial court continued the arraignment until July 20. On July 20, the court arraigned defendant and set the case for a pretrial conference on September 24. On September 24, the court continued the conference to October 15. The conference was held as scheduled on October 15, and at that time the court set the trial for January 4, 2005, with a trial readiness hearing on December 30. Defendant failed to appear at the December 30 hearing. The court scheduled a status check hearing on January 5, at which defendant did appear. At that hearing, the court set the trial for March 8, with a new trial readiness hearing on March 3. On March 3, the court postponed the trial to June 21, with a trial readiness hearing on June 16. At the June 16 hearing, the court, once again, postponed the trial to October 4, with a trial readiness hearing of September 29. On September 29, the court again postponed the trial, to January 17, 2006. On January 12, 2006, defendant moved to dismiss on speedy trial grounds.

In moving to dismiss, defendant argued that, pursuant to ORS 135.747, the 546-day delay between his

arraignment on July 20, 2004, and his trial on January 17, 2006, was unreasonable. He relied on ORS 135.747,[1] which provides:

> "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

The trial court found that the majority of the delay was attributable to the state, but it denied the motion, concluding, in essence, that the delay was reasonable in light of a lack of judicial resources, the priority given to older cases and trials involving in-custody defendants, and the fact that the delay did not exceed the period established by the statute of limitations. The court acknowledged that the documentation of the specific reasons for the delays was minimal, but it explained that, in general, it sets a number of cases for trial on the same day, that many of those do not go to trial, and that, of the ones that do, the court uses the age of each case and the custody status of each defendant to decide which cases to try and which cases to set over. The pertinent portions of the trial court's findings are as follows:

> "So I think irrespective of everything, this case was bumped, and for the purpose of the record, * * * we set our trial readiness conferences and our trials somewhere between five and six to seven cases deep, the cases are timed or dated, the oldest case goes first unless we have a statutory priority, for example, like an in-custody case, an in-custody case because of the sixty-day rule, bumps a person that is not in custody, and the defendant was never in custody after he signed the third party release agreement in this case.

> "* * * * *

> "I would note that it's the practice, and most of these trial readinesses are done by myself, that when I am asking—when I am setting a new trial date, I'm asking that we come up with a trial date when it's the next available trial

---

[1] Defendant also made a constitutional speedy trial argument, but on appeal he relies solely on the statutory ground, so we need not address his constitutional argument.

date that we have, as best we can, and I ask the counsel if they're available on that date. * * *

"* * * * *

"And for the purpose of the record, this is a three-judge judicial district, myself, who does most of the trial work here in Crook County, generally on the first and third week of each month, and two other judges, Judge Nelson and Judge Ahern, who live in Madras and cover when we're having court trial weeks the first and the third week; they're down in Courtroom B, which is a courtroom that's not equipped to have second jury trials going at the same time.

"I would also point out for the purpose of the record that, unlike my adjoining county, and I'm not talking about Jefferson County, we do not have Referees to do all the juvenile work, we do our own. We do not have Referees that do small claims and FED's [forcible entry and detainer], we do our own. We don't have volunteer judges that come in and do traffic court, we do our own. So the judges in this judicial district do everything from traffic cases to murders, and everything from small claims to major personal injury cases. We do it all. We have nobody substituting for ourselves, and the attempts in the last two legislative sessions to get additional judicial help from the legislature have failed. I don't think that's an excuse necessarily, but it's certainly pertinent in regards to this.

"The documentation on this is minimal, but I've tried to provide fairly the documentation of what I think happened, without knowing what the conversations are at each of the trial readiness conferences. I don't recall a particular conversation in regards to this case. I think that most of the trial readiness conferences were done by myself, but I don't recall the particular conversations in any of the cases until last Thursday regarding the issue of speedy trial. And that doesn't mean they did not take place, but I don't recall them personally.

"* * * I'm not particularly pleased that it has taken this long to try this case. I'm not particularly pleased that it takes so long to try any of our cases in this judicial district, but I think the Court attempted to set this case on a regular basis and tried to get it into court, and sometimes you get snake bit, and I think you get snake bit, one, because of lack

of judicial resources, but secondly, because frequently there are in custody cases in front of you that bump cases off.

"I can't say without looking at the trial readiness conferences on each of these dates whether there was an in custody, but I can say that we date these cases, and the oldest case goes first, which is the way that it has always worked, from my understanding, since I started practicing law in 1972 * * * continuing until today's date [in] 2006.

"I'm denying the motion to dismiss. I don't think it fits the criteria of certainly beyond the statute of limitations * * *."

Following a jury trial on January 17 and 18, defendant was acquitted on the burglary charge and convicted of assault in the fourth degree[2] and unlawful use of a stun gun. This appeal followed.

 In reviewing the denial of a motion to dismiss on statutory speedy trial grounds, we review for errors of law the trial court's conclusion that the delay in bringing the defendant to trial was reasonable under ORS 135.747. *See State v. Johnson*, 339 Or 69, 86, 116 P3d 879 (2005). Our first task under ORS 135.747 is to determine the amount of the delay that is attributable to the state—that is, that the defendant did not request or consent to.[3] *See State v. Spicer*, 222 Or App 215, 221, 193 P3d 62 (2008) ("If the defendant did not apply for or consent to a delay, that delay is part of the period included in the statutory calculation of reasonableness."). If the delay is longer than "ordinarily would be expected," we determine whether the delay was reasonable by examining the "attendant circumstances," including the reasons for the delay. *Johnson*, 339 Or at 88.

 Even if the delay was unreasonable, ORS 135.750 provides that trial courts have discretion to continue a case if

_____

[2] Although defendant was charged with second-degree assault, the jury found him guilty of the lesser-included offense of fourth-degree assault.

[3] As we have previously noted, for purposes of ORS 135.747, "the state" is a unitary political entity that includes the courts as well as the executive and legislative branches, and, thus, court-related delays are attributable to the state. *See State v. Brunoe*, 204 Or App 749, 754, 131 P3d 743, *rev den*, 341 Or 245 (2006). Thus, when we use the phrase "the state bears responsibility for the delay," we do not mean to imply that the *prosecutor* is necessarily responsible for it.

"sufficient reason therefor is shown." Whether sufficient reason exists is a question of law. *Johnson*, 339 Or at 86.

■ In this case, defendant was indicted on July 15, 2004, and brought to trial on January 17, 2006. A period of 551 days—just over 18 months—passed between the indictment and the trial. On the date that defendant was indicted, he moved for a continuance of the arraignment to July 20, 2004. Thus, the first five days of delay are attributable to defendant. During the period that followed defendant's arraignment, the trial court postponed the pretrial conference once and the trial four times. It is undisputed that defendant did not consent to any of the delays between his arraignment and the first trial readiness hearing on December 30, 2004, or to the last three postponements of his trial, which encompasses the period from March 3, 2005 to January 17, 2006. Thus, the state bears responsibility for those 483 days—approximately 16 months.

■ It is also undisputed that defendant consented to the six-day delay between the first scheduled trial readiness hearing (December 30, 2004), for which defendant failed to appear, and the date on which he did appear (January 5, 2005). The only period in dispute, then, is the 57 days between January 5, and the trial readiness hearing on March 3, 2005. We briefly address that disputed period.

■ Defendant asserts, without explanation, that the 57-day delay is attributable to the state. The state responds that the delay is "arguably" attributable to defendant, given that he failed to appear at the first trial readiness hearing. The state does not belabor the point, however, for two reasons. First, it concedes that the evidence suggests that the January 4, 2005, trial would have been cancelled even if defendant had appeared for the readiness hearing. Second, it asserts that attributing the delay to one party or the other will not affect the outcome of our analysis. The trial court did not make any express conclusions as to which party bears responsibility for the period in question. We conclude that the approximately two-month delay between January 5 and March 3, 2005, is attributable to the state because defendant revoked his consent to further delay by appearing at the January 5 court date. *See State v. Peterson*, 183 Or App

571, 573-74, 53 P3d 455 (2002) (consent to a delay by failure to appear is revoked by reinitiation of contact with the court). Accordingly, for purposes of our analysis, we conclude that the state bears responsibility for 540 days—just under 18 months—of the delay in bringing defendant to trial.[4]

■ The state concedes, and we agree, that a delay of 18 months between arraignment and trial is longer than would ordinarily be expected. *Cf. State v. Garcia/Jackson,* 207 Or App 438, 446, 142 P3d 501 (2006) (concluding that a delay of 14 months was longer than would ordinarily be expected). Accordingly, we must examine the circumstances to determine whether the delay was reasonable. *See Johnson,* 339 Or at 88.

■ The trial court found that the bulk of the delay—the postponements of defendant's trial dates—was caused by a combination of a lack of judicial resources and the court's prioritization of cases by age of case and custodial status.[5] Defendant acknowledges that some accommodation must be made for delays due to overcrowded dockets, but he argues that the overall delay of 18 months in this case was too long to be justifiable on the basis of lack of judicial resources. The state argues, among other things, that the reasons cited by

---

[4] We acknowledge that a defendant's failure to appear at a readiness hearing (also referred to in some jurisdictions as "call") affects scheduling and usually requires a continuance of the trial. However, a delay that follows a defendant's revocation of consent by failure to appear is still attributable to the state. *See Spicer,* 222 Or App at 221 ("[T]he issue under ORS 135.747 is not whether the state caused a delay but whether the trial was 'postponed upon the application of the defendant or by the consent of the defendant.'"). There is nothing in this record to suggest that defendant requested or consented to a postponement of his trial after January 5, and certainly not a two-month postponement.

[5] The trial court candidly stated that the documentation in support of its findings was "minimal." We have previously held that a 15-month delay was unreasonable in spite of the trial court's finding that it was caused by the "financial incapacity of the courts," where no evidentiary record was made. *See State v. Greenlick,* 210 Or App 662, 664, 152 P3d 971 (2007); *see also State v. Schneider,* 201 Or App 546, 554, 120 P3d 16 (2005), *rev den,* 341 Or 392 (2006) ("[T]he record of each case must demonstrate precisely how an overcrowded docket contributed to the period of delay at issue."). In this case, defendant does not challenge the sufficiency of the evidence in support of the trial court's findings, so we do not consider whether the record supports them. *Cf. id.* at 555 (noting that the defendant did not contend that the state had failed to make an adequate record regarding a delay caused by a shortage of judges, and thus considering that shortage in making the "reasonableness" determination). We take the opportunity, however, to reiterate the importance of an adequate record to our review function.

the trial court for the delays justified denying defendant's motion to dismiss.[6]

■ There is no precise formula for determining whether a particular delay is reasonable. The determination requires courts to weigh several factors, including the reasons for the delay, the length of the total delay attributable to the state, and the length of any portion of the delay that was unjustified.[7] Prior cases illustrate the weighing process.

In *Peterson*, no justification was offered for six months of delay, but, given that the total delay attributable to the state was only seven months, we concluded that the

---

[6] The state also argues that, even if the delay was unreasonable, the record demonstrated sufficient reason to continue the case under ORS 135.750. Because we conclude that the delay was not unreasonable, we need not consider that argument.

[7] In several of our cases in recent years, we have noted that courts have generally concluded that delays of more than 15 months that are attributable to the state are unreasonable. If taken out of context, that observation may give readers the erroneous impression that such delays are unreasonable regardless of the reasons for them. Those cases do not stand for that proposition. In *State v. Davids*, 193 Or App 178, 183, 90 P3d 1 (2004), *aff'd*, 339 Or 96, 116 P3d 894 (2005), we stated that, in cases that have considered whether a particular delay is reasonable under the circumstances, "the courts generally have concluded that state-caused delays to which a defendant has not consented of 15 months or more are generally unreasonable and that delays of seven months or less are reasonable." *See also Spicer*, 222 Or App at 222 (citing *Davids* for that proposition); *State v. Forsyth*, 220 Or App 476, 485, 188 P3d 299 (2008) (same).

In support of that assertion in *Davids*, we cited *State v. Harman*, 179 Or App 611, 40 P3d 1079 (2002). In *Harman*, the delay to which the defendant had not consented totaled at least five years. Much of the delay was occasioned by a dispute over a discovery request that the defendant had made and a collateral mandamus action—including an appeal—that arose from that dispute. We concluded that that portion of the delay was reasonable under ORS 135.747. However, there were two periods of time—one lasting ten months and the other five months—for which no explanation was given. We concluded that 15 months of *unjustified* delay was unreasonable. *Id.* at 616-17. We accurately summarized the assertion in *Davids* in *State v. Johnson*, 193 Or App 250, 256, 90 P3d 4 (2004), *aff'd*, 339 Or 69, 116 P3d 879 (2005) (decided on the same date as *Davids*), stating, "In general, when a defendant has not consented to the delay *and the state does not offer an explanation for it*, delays of 15 months or more are unreasonable." (Emphasis added.) Furthermore, as we pointed out in *Forsyth*, 220 Or App at 485, our assertion in *Davids* "was not a bright-line test, and the analysis of the reasonableness of any delay necessitates consideration of the 'attendant circumstances,' which includes the reasons for the delay." *See also Spicer*, 222 Or App at 222 (making the same observation).

Our assertion in *Davids* that delays of 15 months or more are generally unreasonable should be understood in context with *Harman* and our explanation in *Forsyth* and *Spicer*.

defendant was brought to trial within a reasonable period of time. 183 Or App at 575.

*Garcia/Jackson* involved a longer total delay attributable to the state, 14 months, but 11.5 months of the delay was attributable either to the routine scheduling delays that occur in every case or to judicial resource limitations, both of which provided sufficient justification for that portion of the delay. 207 Or App at 446-47. Even assuming that the remaining 2.5 month delay was unjustified, we concluded that the total delay was not so long as to be unreasonable. *Id.* at 447.

The balance shifted in *State v. Allen*, 205 Or App 219, 228, 134 P3d 976 (2006), in which, as in *Garcia/Jackson*, 11.5 months of the delay attributable to the state was caused by justifiable circumstances. However, although it was not clear from the record on appeal, an additional 3.5-month delay may have been caused by a discovery violation by the prosecutor. Assuming that it was, the total delay would have been 15 months, which we held would be unreasonable under the circumstances.[8] *Id.*

The various factors were again somewhat different in *Spicer*, 222 Or App 215. There, the total delay for which the state bore responsibility was approximately 17 months. A little more than five months of the delay was attributable to routine scheduling. A delay of three months resulted from several state witnesses being unavailable on a date for which trial was scheduled. *See Peterson*, 183 Or App at 575 (explaining that "the unavailability of witnesses is one of the most common causes of delay" and does not weigh heavily against the state). Thus, eight months of the delay was justified.

However, the remainder of the delay in *Spicer* was not justified. Seven months of the delay resulted from there being no judge available on two of the scheduled trial dates. Although some delays can be justified by unavailability of

---

[8] The additional 3.5-month delay may have been attributable to the defendant. We remanded to the trial court to determine which party actually bore responsibility, stating that, if it was attributable to the defendant, the pertinent delay would be less than one year and would not be unreasonable under the circumstances. *Allen*, 205 Or App at 228-29.

judges when that is an effect of the trial court having an over-crowded docket, the "record of each case must demonstrate precisely how an overcrowded docket contributed to the period of delay at issue." *State v. Schneider*, 201 Or App 546, 554, 120 P3d 16 (2005), *rev den*, 341 Or 392 (2006) (citing *Johnson*, 339 Or at 89). In *Spicer*, the state did not argue that any of the delay was attributable to a lack of judicial resources. 222 Or App at 220 n 3. The lack of an explanation in the record for the court's inability to have a judge available indicated that the delay was not reasonable. *Id.* at 223 ("[T]he state has not shown that defendant could not reason-ably have been brought to trial within a substantially shorter cumulative period of time.").

The remaining delay to which the defendant did not consent lasted nearly two months and was caused by a sched-uling error by the court that necessitated resetting the case for trial. *Spicer*, 222 Or App at 217. We concluded that, under the circumstances, the defendant was not brought to trial within a reasonable time. *Id.* at 223.

■ Even when all of the delays in a case are individually justifiable, there comes a point at which the total length of the delay attributable to the state outweighs the reasons for it.[9] In *State v. Adams*, 339 Or 104, 116 P3d 898 (2005), the state bore responsibility for a total of 23 months of delay. The state argued that the delay was reasonable because it was caused by a lack of judicial resources. The Supreme Court acknowledged that a lack of judicial resources can justify at

---

[9] The point at which that occurs varies depending on the strength of the rea-sons for the delay. To put it bluntly, some reasons are better than others. Thus, although the Supreme Court held in *State v. Adams*, 339 Or 104, 116 P3d 898 (2005), that a total delay of 23 months in a misdemeanor DUII prosecution was unreasonable even if it was attributable to a lack of judicial resources, longer delays have been held reasonable in other circumstances. For example, in *State v. Ayers*, 207 Or App 668, 692-93, 143 P3d 251, *rev den*, 342 Or 253 (2006), we held that a delay of more than four years was reasonable, given that the defendant had been incarcerated in Washington and, under the circumstances, the state could reasonably have assumed that she had waived the right to a speedy trial on the charges against her in Oregon. *See also State v. Johnson*, 342 Or 596, 616-17, 157 P3d 198 (2007), *cert den*, ____ US ____, 128 S Ct 906 (2008) (holding that a delay of more than four years caused largely by the state making pretrial appeals was reasonable under the circumstances); *State v. Fleetwood*, 186 Or App 305, 323, 63 P3d 42, *rev den*, 336 Or 125 (2003) (holding that a delay of more than eight years attributable to the "normal workings of the appellate process" in addressing a pre-trial appeal is reasonable).

least some trial court decisions to postpone a trial, but it held that the total delay in that case was simply too long to be justifiable on that ground. *Id.* at 111-12.

Viewed together, the cases discussed above illustrate that the acceptability of the total delay in a case is influenced by the extent to which it is justified. The longer the total delay is, the shorter any unjustified portion may be. To recapitulate: *Peterson* involved a substantial unexplained delay (six months) but a relatively short total delay (seven months). *Garcia/Jackson* involved a longer total delay (14 months), but the unjustified portion of it was relatively short (2.5 months); thus, despite the longer total delay, the period of time in which the defendant was brought to trial was still reasonable. In *Allen*, both the total delay and the unjustified portion of it were, in one factual scenario, a month longer than in *Garcia/Jackson* (15 months and 3.5 months, respectively), which tipped the balance against reasonableness. In *Spicer*, both the total delay (17 months) and the unjustified portion of it (nearly 9 months) were longer still, again leading to the conclusion that the total delay was unreasonable. Finally, in *Adams, no* unjustified delay was identified, but the long total delay (23 months) nevertheless led to the conclusion that the defendant was not brought to trial within a reasonable period of time.

The facts of this case do not neatly match those of any of the above cases—or any other of which we are aware. However, weighing all of the circumstances, we agree with the trial court that the delay here was reasonable. Although it was longer than in either *Allen* or *Spicer*, the balance in those cases was shifted by the presence of delays that were not justified. Here, all of the delays were justified—in the early part of the case's life, by the routine scheduling delays that are always present and, later, by the lack of judicial resources in the Twenty-second Judicial District (Crook and Jefferson counties).

Furthermore, the total length of the delay does not, in our view, outweigh the reasons for it, as was the case in *Adams*. The Supreme Court noted in *Adams* that it is "difficult to identify the point at which delay becomes unacceptable," but it concluded that the statute of limitations provides

"some indication of what the legislature views as the outer limit of reasonableness for proceeding against a defendant for a given crime." 339 Or at 112. In this case, defendant was charged with two felonies and one misdemeanor. The statute of limitations for the felonies is three years; for the misdemeanor, it is two years. ORS 131.125(6)(a), (b). Even if we considered only the misdemeanor limitation period, the 18-month delay does not come so close to it as to become unacceptable.

Defendant points out that the delay significantly exceeds the Oregon Standards of Timely Disposition, the aspirational standards adopted by the Oregon Judicial Conference in 1990. Those standards provide that, with respect to both felonies and misdemeanors, all cases should be tried within one year "except for exceptional cases in which continuing review should occur." *See* Oregon Standards of Timely Disposition in Oregon Circuit Courts, Oregon Judicial Conference (Reapproved April 7, 1999). The Supreme Court has noted that the standards are "informative in determining the length of time that is 'reasonable' in which to bring a case to trial." *State v. Emery*, 318 Or 460, 471 n 17, 869 P2d 859 (1994).

Although the delay in this case exceeds those standards, "continuing review" did occur. This is not a case like *State v. Hampton*, 152 Or App 742, 954 P2d 1267 (1998), on which defendant relies, in which a total delay of nearly two years consisted primarily of a 19-month delay that was caused entirely by the court's inattention to a motion that it had taken under advisement. Here, the case was before the court for conferences and hearings at least every two to four months. Although the case misses the mark established by the aspirational Standards of Timely Disposition, under the circumstances, we cannot say that the delay was unreasonable.

In short, the 18-month delay attributable to the state was justified under the circumstances. The trial court did not err in concluding that the delay was reasonable under ORS 135.747 and, thus, in denying defendant's motion to dismiss.

Affirmed.