Argued and submitted March 25, affirmed November 18, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HIRAM SAMUEL CUNNINGHAM, JR.,
*Defendant-Appellant.*

Douglas County Circuit Court
04CR1184FE; A132956

221 P3d 165

Mary M. Reese argued the cause for appellant. With her on the brief was Mary M. Reese, Lawyer, LLC.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

**ORTEGA, J.**

Defendant appeals his conviction for delivery of a controlled substance, *former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005), a Class B felony, assigning error to the trial court's denial of his motion to dismiss on statutory speedy trial grounds. ORS 135.747. For the reasons explained herein, we affirm.

The pertinent facts are procedural. Defendant was charged by information on June 28, 2004, with possession of a controlled substance (PCS) and delivery of a controlled substance (DCS), based on events occurring the day before. On July 23, 2004, the state recharged defendant by indictment. Defendant entered a plea of not guilty, and trial was set for August 20, 2004. On that date, the court informed defendant that the assigned judge was in the midst of an ongoing trial and that there were no judges available to try his case. The next date when the court, the prosecutor, and defense counsel were all available for trial was December 3, 2004.

On December 3, 2004, defendant's case came to trial. A jury convicted him on the PCS charge, but deadlocked on the DCS charge. The state requested time to consider whether to retry defendant, and the trial court set a status conference for December 20, 2004.

Defendant failed to appear for the scheduled status conference, at which the prosecutor informed the court that the state would retry defendant on the DCS charge. The court then issued a warrant for defendant's arrest. Defendant failed to appear at the next scheduled status conference on January 3, 2005, but appeared later that day. The court recalled the warrant and rescheduled the status conference for January 24, 2005. The court later postponed the status conference to January 31, 2005.

At that status conference, defense counsel requested a trial date in May. However, the prosecutor and defense counsel were not available on the May dates that were open on the court's calendar, so the trial was set for June 3, 2005.

Defendant filed a demurrer and, at a hearing on the demurrer on May 12, 2005, the judge informed the parties that he would not be available for trial on June 3, 2005,

because of personal travel plans. The court reset trial for the next mutually available date, September 7, 2005, but later postponed trial to October 21, 2005, and again to March 16, 2006.

On March 14, 2006, defendant moved to dismiss the case for lack of a speedy trial. In moving to dismiss, defendant contended that, in light of the fact that he had never requested a continuance and had been ready for trial on all of the previously scheduled trial dates, the delay from the date of his arrest to the second trial was unreasonable under ORS 135.747. Although there is no transcript of the proceeding, the trial court apparently heard argument on defendant's motion on March 16, the date set for trial, and took the matter under advisement. The court also reset trial to May 5, 2006.

On the scheduled trial date, the trial court denied the motion to dismiss and proceeded with trial. In denying the motion to dismiss, the trial court did not expressly address the question of the reasonableness of the delay. The court explained that, although there had been delays in bringing the case to trial, most of the delays were due to the court's schedule, and not attributable to the state:

"[T]his case was tried on December the third [2004]. There was a hung jury on [the delivery charge]. And then it next appeared on the docket on June the third [2005]. Well, I don't get out of here much but during that time frame there were two periods of time that I was regularly away * * *.

"* * * So the 6/3/05 I'm relatively sure that I was either in Texas visiting my parents or on the way.

"The September seventh trial [date] is at or about Labor Day which is when I take an annual hike with my sons, and it was also getting caught up in [a complex criminal case]. I was not available to do anything from virtually the middle of August [2005] until January the seventeenth [2006] when the jury portion of [the other case] finally concluded. * * * But then I started trying TPRs and divorces every day. And frankly it was only yesterday that I actually got caught up on the dissolution work. I still haven't gotten caught up on the criminal work * * *.

"So that's the reality when you have one task to do for six or seven months and you have an individual docketing system.

"This case, if it hadn't gone to trial, could have probably been switched back to somebody else who was available if it had hit [the] docket again, but having gone to trial it's unlikely that someone else would do it.

"So yeah, there's been delay. That's the reason. Can I attribute that to the State? I don't think so, so that might make an interesting issue for the Appellate Court but so motion's denied."

Thus, the judge explained, the majority of the delay was attributable to the court, because of the judge's own heavy caseload and the court's "individual docketing system," *i.e.*, the practice of assigning cases to a single judge from beginning to end.

 On appeal, defendant asserts that the trial court erred in failing to dismiss the indictment under ORS 135.747. That statute provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

In reviewing the denial of a motion to dismiss on statutory speedy trial grounds, we review for errors of law the trial court's conclusion that the delay in bringing the defendant to trial was reasonable under ORS 135.747. In calculating the length of a delay under the statute, the court begins by determining the length of time from the date the defendant was charged, and subtracts from that period any delays either consented to or requested by the defendant. *State v. Bayer*, 229 Or App 267, 277-78, 211 P3d 327 (2009). If the remaining period of time exceeds expectations for bringing an offender to trial on the particular type of charge, the court must determine whether the delay was nevertheless reasonable given the attendant circumstances. *Id.* at 278 (citing *State v. Johnson*, 339 Or 69, 88, 116 P3d 879 (2005)).

As we noted in *State v. Garcia / Jackson*, 207 Or App 438, 445 n 6, 142 P3d 501 (2006), in determining the reasonableness of the total delay, the question is not whether particular periods of time are attributable to the state, but whether, once delays consented to by the defendant have been subtracted, the entire remaining delay is reasonable. If the defendant did not apply for or consent to a delay, that delay is part of the period included in the statutory calculation of reasonableness. *State v. Spicer*, 222 Or App 215, 221, 193 P3d 62 (2008).

The parties agree that the starting point for calculating the length of time to bring defendant to trial the second time is the date on which he was charged. *Johnson*, 339 Or at 91-92. Defendant would begin counting from June 28, 2004, the date of the information; the state begins its count from July 23, 2004, the date of the indictment. The state is correct. *State v. Adams*, 339 Or 104, 106-07, 110, 116 P3d 898 (2005); *State v. Purdom*, 218 Or App 514, 519, 180 P3d 150 (2008) (a prosecution commences for the purposes of ORS 135.747 from the date of the superseding charging instrument). Thus, July 23, 2004, is the starting point for the purpose of calculating the time that it took to bring defendant to trial. The total period of delay, from the July 23, 2004, indictment to the second trial on May 5, 2006, was approximately 21 and one-half months, or 651 days.[1]

The court is then required to deduct from that total time the portion of the delay attributable to the defendant, either because the defendant requested a postponement or because he is deemed to have consented to it. ORS 135.747; *State v. Schneider*, 201 Or App 546, 552, 120 P3d 16 (2005), *adh'd to on recons*, 204 Or App 710, 131 P3d 842, *rev den*, 341 Or 392 (2006). Moving chronologically from the date of the

---

[1] We note that the state assumes that the time period between indictment and the mistrial is counted as a part of the total delay. In *State v. Hampton*, 152 Or App 742, 744-45, 954 P2d 1267 (1998), we included the time period from the charging indictment through a mistrial in the total delay, but in that case the question was not presented and the court did not expressly decide whether the initial period before the mistrial was included within the total delay for statutory speedy trial purposes. As explained herein, because we ultimately conclude that the total time is not unreasonable and that the period before the mistrial does not materially impact the reasonableness of the delay, we need not address that question here and it remains undecided.

indictment, it appears that the first delay to which defendant must be deemed to have consented is from the originally scheduled trial date of August 20 to October 29, 2004. The record shows that, when the trial court informed the parties on August 20 that the trial would need to be postponed, defense counsel affirmatively requested a trial date in October. That time period is therefore attributable to defendant. *See State v. Allen*, 205 Or App 219, 227, 134 P3d 976 (2006). Because October 29 was the last date in October 2004 on which a trial could be set, we treat defendant's request as consent to a delay of trial until that date. Accordingly, a delay of 70 days, from August 20 to October 29, 2004, is attributable to defendant.

When the prosecutor stated that he could not be available in October, the next mutually available date for the court, prosecutor, and defense counsel was December 3, 2004. When asked by the court clerk about that date, defense counsel replied, "The third works." The state contends, citing *Schneider*, 201 Or App at 552 (noting that statements such as "[t]hat works," and "[o]kay," and "[t]hat would do it," may constitute express consent to a proposed delay), that defense counsel's response gave implicit consent to further delay of trial to December 3, 2004. However, in light of the context in which the response was made—after defendant's request for an October trial—we do not construe counsel's response, "The third works," as consent to a further five-week delay. *Schneider*, 204 Or App at 712-13 (citing *State v. Brunoe*, 204 Or App 749, 754-55, 131 P3d 743 (2006) (whether a defendant has consented to delay must be determined by reference to the context in which such expressions as "that works" are stated)). Rather, the response was merely an acknowledgment of defense counsel's availability on December 3, 2004. Accordingly, we conclude that defendant did not consent to a delay from October 29 to December 3, 2004, the date of the first trial.

The next delay attributable to defendant was due to his failure to appear at a status conference on December 20, 2004, at which time the state informed the court that it would retry defendant on the DCS charge. *State v. Gill*, 192 Or App 164, 168-69, 84 P3d 825, *rev den*, 337 Or 282 (2004) (concluding that the defendant consented to the delays following his

knowing failures to appear at mandatory court appearances). Defendant's nonappearance at that hearing and at the rescheduled status hearing on January 3, 2005, required the court to reschedule the status conference to January 24, 2005, a total period of 35 days. As defendant notes, however, he became available later in the day on January 3, after the hearing. He is correct that, under *State v. Myers*, 225 Or App 666, 673 n 4, 202 P3d 238, *rev den*, 346 Or 184 (2009), he is deemed not to have consented to any delay subsequent to that date. Thus, the delay attributable to defendant as a result of his nonappearance is only from December 20, 2004 to January 3, 2005, a period of 14 days. The status conference was rescheduled again for January 31, 2005, but the record does not reflect why it was rescheduled, and we do not attribute that additional delay to defendant.

At the January 31 status conference, in light of the fact that defendant had been released from custody, defense counsel suggested a trial date in May 2005. We construe that suggestion as consent to a delay from January 31, 2005 through May 2005, a delay of approximately 120 days.

As explained earlier, on May 12, 2005, the trial judge advised the parties that, for personal reasons, he would not be available on the June 3, 2005, trial date that the parties had agreed to on January 31. The trial was therefore postponed to September 7, 2005, and then to October 21, 2005, and to March 16, 2006. None of those postponements is attributable to defendant.

On March 14, 2006, defendant moved to dismiss the DCS charge on speedy trial grounds. The trial court heard that motion on March 16, 2006, the date set for trial, and then reset trial to May 5, 2006. There is no transcript of that proceeding, and the record does not reveal why the trial was reset to May 5, 2006. The state contends that defendant is deemed to have consented to that delay by filing a motion requiring pretrial resolution. *See State v. Fleetwood*, 186 Or App 305, 316, 63 P3d 42, *rev den*, 336 Or 125 (2003). Although delays attributable to the defendant include "a reasonable time for the judge to study the legal questions raised by the [motion] and to render his decision thereon," *State v. Crosby*, 217 Or 393, 405, 342 P2d 831 (1959); *see*

*Hampton,* 152 Or App at 745-46, here, the record does not reflect that defendant's motion took the court seven weeks to decide or necessitated a postponement of trial. Rather, in ruling on the motion in open court on May 5, 2006, the trial judge explained that, until May 4, 2006, he was still catching up on his docket after the complex criminal trial. Thus, we conclude that the delay from March 16 to May 5, 2006, was not attributable to defendant.

By our calculation, the total delay attributable to defendant is 204 days. When that period is deducted from the total period of time from indictment to trial, the unconsented delay and, therefore, the relevant delay for statutory speedy trial purposes is 447 days, or just under 15 months.

A delay of 15 months exceeds expectations for bringing a case of this type to trial.[2] *See Myers,* 225 Or App at 674 n 7 (discussing cases addressing unconsented delay of 15 months). Our next inquiry, therefore, is whether the delay in bringing defendant to trial was nonetheless reasonable. *Johnson,* 339 Or at 88. As we said in *Myers,* 225 Or App at 678, there is no precise formula for determining whether a particular delay is reasonable. The Supreme Court has told us that our inquiry is whether the particular length of time is " 'as may reasonably be allowed or required having regard to attendant circumstances.' *State v. Emery,* 318 Or 460, 467, 869 P2d 859 (1994) (quoting *State v. Jackson,* 228 Or 371, 377, 365 P2d 294 (1961))." *Adams,* 339 Or at 110. The "attendant circumstances" include the reasons for the delay. In *Adams,* 339 Or at 111, the court stated that a lack of judicial resources is a justification for delay, acknowledging "the obvious fact that trial courts must have some ability to reschedule proceedings to deal with an unpredictable workload. The trial courts, in other words, must have control over their own dockets." However, the court imposed a cautionary

---

[2] We note that we frequently refer to the Oregon Standards of Timely Disposition, adopted by the Oregon Judicial Conference in 1990, for guidance in our determination whether a particular length of time is longer than ordinarily expected to bring a defendant to trial for the charged offense. *See Myers,* 225 Or App at 678. Those standards provide that, with respect to both felonies and misdemeanors, all cases should be "adjudicated or otherwise concluded" within one year "except for exceptional cases in which continuing review should occur." Oregon Standards of Timely Disposition in Oregon Circuit Courts, Oregon Judicial Conference (reapproved Apr 7, 1999).

element. Although various docket control postponements may, individually, be justifiable, ultimately the inquiry must come down to whether the overall period of time to bring a defendant to trial, not considering delays attributable to the defendant, is "reasonable" *in toto*. *Id*. at 112.

Thus, the next step in our inquiry is to address the justifications in the record for the individual delays not attributable to defendant. The record provides explanations for those delays. The period of approximately four weeks from indictment to the first trial date of August 20, 2004, no doubt falls within normal expectations for establishing an initial trial date. *Allen*, 205 Or App at 228 (delays were product of the type of scheduling issues that courts and litigants face regularly). We have previously explained why the delay from August 20 to October 29, 2004, is attributable to defendant. The second delay not attributable to defendant, from October 29 to December 3, 2004, also reflects a routine and reasonable length of time for scheduling a mutually acceptable trial date.

The period from December 3 to the December 20, 2004, status conference is attributable to the state's request for a continuance to determine whether it would retry defendant on the DCS charge, and we conclude that it was a reasonable length of time. The delay from December 20, 2004 to January 3, 2005, is attributable to defendant because of his absence. Although not attributable to defendant, the further delay caused by the need to reschedule the status conference to January 25 was a routine delay due to the necessity of rescheduling the hearing. The reason for the rescheduling of the status conference from January 25 to January 31, 2005, is not explained. As previously noted, the delay from that date through May 2005 is attributable to defendant because it resulted from his requested trial date.

It is clear that a delay of approximately one month, June 2005, was due to the court's personal travel schedule. Then, the lawyers' schedules prevented the case from being reset before September 7, 2005, a routine and reasonable length of time. It is not completely clear why the September 7, 2005, trial date was rescheduled. The trial judge explained that he had personal plans over Labor Day weekend, but that

does not explain his unavailability on September 7, 2005, which was the Thursday after Labor Day. However, the trial judge also explained that, from approximately mid-August 2005 to January 17, 2006, a period of five months, the judge was involved in one particularly complex criminal trial. It is likely, therefore, that the judge's caseload required postponement of the September 7, 2005, trial date.

The trial judge explained that, from the end of the complex criminal trial on January 17, 2006 until May 4, 2006, a period of almost four months, he had been catching up on his docket, including trials of termination of parental rights and dissolution cases. The judge also explained that, in light of the fact that defendant had previously been tried in his court on the same charge, it was unlikely that another judge would have heard defendant's case.

In the state's view, the delays described by the trial court between September 7, 2005 and May 5, 2006, fall within the acceptable justification of "docket congestion." *See Adams*, 339 Or at 111. Defendant contends that, although the record shows that the particular judge's caseload prevented him from trying defendant's case, there is no reason why another judge could not have tried defendant's case during the approximately eight months that the assigned trial judge was busy trying a complex criminal case and catching up on his docket.

We, too, are concerned with the length of that delay. It is true, as the trial judge explained, that the court's individual docketing system did not allow for a case that had previously been heard to be reassigned to a different judge. It is not our place to second guess that practice or the trial court's decisions regarding the management of its own overcrowded docket. *Adams*, 339 Or at 111. However, defendant's case languished for eight months—from September 7, 2005 to May 5, 2006—because the original judge was busy and the county's policy prevented a reassignment of the case. It is understandable that the trial judge's involvement in a complex criminal case from mid-August 2005 to January 2006 prevented him from trying defendant's case. But the explanation of the delay from January to May 2006 is not satisfactory. The trial judge explained that during that time he was

catching up on his docket, trying dissolutions and parental terminations, but the record does not otherwise show why defendant's case—which by January 2006 was 18 months old—was not given higher priority. In *Schneider*, 201 Or App at 554, we said that "the record of each case must demonstrate precisely how an overcrowded docket contributed to the period of the delay at issue." *See also State v. Andrews*, 226 Or App 503, 204 P3d 140 (2009) (record must demonstrate reasonableness of length of resulting delay). We conclude that, without further evidence showing how the court prioritized its cases during the period of January through May 2006, a delay of four months because of a lack of judicial resources is not reasonable.

■ We are inevitably required to assess whether the overall time period in bringing a defendant to trial was reasonable. *State v. Forsyth*, 220 Or App 476, 482, 188 P3d 299 (2008). In *State v. Davids*, 193 Or App 178, 183, 90 P3d 1 (2004), *aff'd*, 339 Or 96, 116 P3d 894 (2005), we observed that unconsented delays of 15 months or more are "generally unreasonable." As we noted in *Myers*, however, our statement was directed to *unexplained* delay. 225 Or App at 674 n 7. For two reasons, we conclude that, considering the attendant circumstances in this case, the total delay of 15 months was not unreasonable.

First, a portion of the unconsented delay, albeit a relatively small portion (63 days), occurred during the period before the first trial, which had been timely set within five months of the charging instrument and which ended in a mistrial. In light of the underlying purpose of ORS 135.747— to clear out cases that are languishing in the criminal justice system and to service as a "housecleaning" mechanism for trial court dockets, *Johnson*, 339 Or at 90-91—we conclude that the period of time before the first, timely trial is of little significance in our reasonableness determination.

Second, as we said in *Myers*, our cases illustrate that the acceptability of the total delay is influenced by the extent to which it is justified. 225 Or App at 677. The longer the total delay, the shorter any unjustified portion may be. *See Davids*, 339 Or at 102 (11.5 months of unconsented and unjustified delay held unreasonable); *Andrews*, 226 Or App

at 509 (24-month unconsented delay in felony case, most of which was unjustified, held unreasonable); *Myers*, 225 Or App at 678 (18-month delay, fully justified, in bringing defendant to trial on felony charges held reasonable); *State v. Spicer*, 222 Or App at 223 (17.25 months of unconsented delay in bringing defendant to trial on felony charges, with nine months unjustified, held unreasonable); *Forsyth*, 220 Or App at 485 (21-month unconsented and unjustified delay in bringing felony defendant to trial held unreasonable). Here, of the total 15-month unconsented delay, we have accepted the justification for all but four months, and that weighs in favor of a conclusion of reasonableness.

In two recent misdemeanor cases, we considered delays similar to those involved here. In *State v. Dixon*, 224 Or App 66, 197 P3d 1106 (2008), *rev den*, 346 Or 10 (2009), we considered a 14-month unconsented delay, eight months of which had been explained by docket congestion and limited judicial resources. *Id.* at 76. Given those attendant circumstances, we concluded that the time to bring the defendant's case to trial was not unreasonable as a matter of law. *See also Garcia/Jackson*, 207 Or App at 446-67 (14-month delay, encompassing four months of delay resulting from shortage in legislative appropriations, held not unreasonable). Here, the total unconsented delay was only one month longer than the 14-month delay we concluded was not unreasonable in *Dixon* and *Garcia/Jackson*. We conclude that the delay in bringing defendant to trial was not unreasonable as a matter of law under ORS 135.747.

Affirmed.