Argued and submitted July 31, reversed and remanded for entry of judgment of
dismissal September 26, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT VERNON PETERSON,
*Defendant-Appellant.*

Deschutes County Circuit Court
MI082623; A146507

287 P3d 1243

Jonah Morningstar, Deputy Public Defender, argued
the cause for appellant. With him on the brief was Peter
Gartlan, Chief Defender, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued
the cause for respondent. With her on the brief were John
R. Kroger, Attorney General, and Anna M. Joyce, Solicitor
General.

Before Armstrong, Presiding Judge, and Brewer, Judge,
and Duncan, Judge.

BREWER, J.

**BREWER, J.**

Defendant appeals from a judgment of conviction for misdemeanor driving under the influence of intoxicants (DUII), ORS 813.010, and refusal to take a test for intoxicants, ORS 813.095, arguing that the trial court erred in denying his motion to dismiss the accusatory instrument because the 19-month delay between his arraignment and trial violated his right to be tried within a "reasonable time" under ORS 135.747. We reverse and remand for entry of a judgment of dismissal.

The state charged defendant, by an information filed on September 26, 2008, with the above-described misdemeanors. When defendant was arraigned on October 1, the court set a status hearing for November 5. In response to defendant's multiple requests for more time, the court agreed to reset that hearing three times—ultimately, to January 30, 2009. But, apparently due to an oversight, the court did not enter that hearing date on the docket, and the hearing was not held until June 30, 2009. The stated purpose of the June 30 hearing was to confer on the status of the case and set a trial date.

At the June 30 hearing, the court initially suggested a trial date of October 6, but a state's witness was unavailable at that time. The court noted that defense counsel had another trial scheduled on October 20 and then suggested a date of September 16. The parties agreed. However, on August 13, the state asked for a postponement, and the court granted that request and reset the trial for October 28. On October 26, defendant asked for a postponement so that he could locate a witness and obtain additional discovery. The court once again granted a postponement and directed the parties to return in two weeks to inform the court about their progress on those matters. The court anticipated getting the trial "reset as soon as possible" and set a conference on November 12 for that purpose. On November 12, the prosecutor informed the court that he intended to file a motion regarding an evidentiary matter by the end of that week. Defendant agreed to reset the trial date after the state filed its motion.

The state filed the evidentiary motion on November 19. On November 24, the parties appeared before the court to set a hearing date for the state's motion. The state asked that the matter "be set out until mid-February" because the Supreme Court was in the process of reviewing this court's decision in *State v. Machuca*, 231 Or App 232, 218 P3d 145 (2009), *rev'd*, 347 Or 644, 227 P3d 739 (2010), which concerned the same issue as the state's evidentiary motion. This court's decision in *Machuca* had been issued on September 30, 2009, and it affected the admissibility of some of the state's evidence. The prosecutor also told the court that, "if defense counsel has an objection to [setting the case over to mid-February], we're happy to do it earlier." The court indicated that "my understanding is that that case is getting fast-tracked at the Supreme Court for all the obvious reasons," and defense counsel replied, "[T]hat's my understanding." Defense counsel did not object to setting the matter over to February 1, 2010.

When the parties reconvened on February 1, 2010, the prosecutor advised the court that *Machuca* was an "accelerated appeal" before the Supreme Court, that arguments had been held, and that supplemental briefing was to have been filed. Defense counsel stated, "I think we've been setting [*Machuca* motions] all out to March or April at this point." The prosecutor advised the court that March 3 was the date on which such motions would be heard in other cases. The court then directed the parties to appear on March 3 to schedule further proceedings.

When the parties returned on March 3, the Supreme Court had issued its decision in *Machuca*, and that decision obviated the need to hear the state's evidentiary motion. The parties and the court then agreed to a trial date of May 5. On May 3, defendant advised the court that he was ready for trial, but the court explained that the case needed to be reset because of jury selection logistics in a death penalty case that required the assembly and management of 2,000 prospective jurors. Defendant asked the court not to schedule trial on a Wednesday, and the court suggested June 22. The prosecutor then asked if the trial date could be set after July 2, and the court suggested August 17. Both

parties agreed. Then, on August 13, 2010, defendant moved to dismiss the case on statutory speedy trial grounds.

The trial court denied that motion. The court analyzed each part of the delay that had occurred and attributed the initial delays in the case to the defendant, as a result of the set-overs that he had requested. The court attributed the delay that had occurred between January 30, 2009 and June 30, 2009, to the state, because that interval of delay had resulted from the court's own scheduling error. The court then attributed the delay that had occurred between June 30, 2009 and October 28, 2009, to the state, because the state had requested that delay due to witness unavailability. The court next attributed the delay that had occurred between October 28, 2009 and November 24, 2009, to defendant, who had needed additional time to prepare for trial. The court then considered the delay between November 24, 2009 and March 3, 2010, that had been occasioned by the state's suggestion that the parties await the Supreme Court's decision in *Machuca*:

> "Everybody knew *Machuca* before the Supreme Court was on a fast track for a decision. Generally, a reasonable period of time for appeal of an adverse ruling is not really counted against the state, as long as it's a reasonable period. So it does seem that although that counts against the state, that it probably is not going to count against the state so heavily as to drive the issue.
>
> "* * * * *
>
> "And then from October 26th, '09 to 11/24/09, that's where we had it set over for a short period of time to see if the 9-1-1 issue would be resolved and if you could resolve your witness availability issue. And apparently *Machuca* must have become an issue right around then. And set on 11/24 to get a motion hearing. *Machuca* motion filed 11/19. On 11/24 it was reset to February 1st. On February 1st reset to 3/3 of 2010.
>
> "Those were all delays because of *Machuca*. Again, the[y] count against the state, what I conclude, that it was a reasonable position for the state to take[.]"

The court then assessed the final period of delay, May 5, 2010 to August 13, 2010:

"March 3rd it was set for trial May 5th. And [another judge] postponed it at that point, and that was because of the State versus Randy Guzek trial. That again counts against the state. But again, we had 2,000 jurors coming in on a death penalty case, death penalty sentencing case. I think it counts against the state, but I don't think, again, heavily so.

"I think the motion should be denied."

Defendant entered a conditional guilty plea to the charged offenses; this appeal followed.

Defendant renews his arguments on appeal, contending that the cumulative delay attributable to the state violated his right to be tried within a reasonable time under ORS 135.747, because:

"A 19-month delay in bringing a defendant to trial exceeds expectations for a misdemeanor DUII case. Moreover, at least 15 months of the delay was either unexplained or explained by non-legitimate reasons: the state's decision to stop DUII prosecutions following *Machuca*, a court scheduling error, and unexplained delays between the filing of the charging information and a defense set-over and between the entry of plea and a trial date.

"The other four months of delay were for reasons that arguably would have justified a *brief* delay, but which instead resulted in lengthy delays for unknown reasons. Specifically, the state offered no explanation for (1) why the aggravated murder trial resulted in a three month delay and (2) why a temporary officer witness availability issue resulted in a one month delay."

ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

The Supreme Court has adopted a process for analyzing a motion to dismiss under ORS 135.747. We are to "determine the relevant amount of delay by subtracting from the total delay any periods of delay that [the] defendant requested or consented to." *State v. Glushko/Little*, 351 Or 297, 305, 266

P3d 50 (2011). We then determine whether that delay is reasonable, which requires an examination of "all the attendant circumstances." *Id.* at 315-16 (citing *State v. Johnson*, 339 Or 69, 88, 116 P3d 879 (2005)). More specifically, "the circumstances that cause the delay generally will determine whether the delay (and thus, the overall time period for bringing the defendant to trial) is reasonable." *Johnson*, 339 Or at 88.

The parties do not disagree with respect to the proper allocation of the cumulative delay in this case. Of the approximately 686 days of delay between the filing of the information and the hearing on defendant's motion to dismiss, defendant requested or consented to approximately 113 days, leaving attributable to the state a cumulative period of delay of approximately 573 days, or roughly 19 months. The striking point in this case is whether that 19-month period was reasonable for purposes of ORS 135.747. The state contends that the only period of unreasonable delay that occurred in this case was the five-month interval between January 30, 2009 and June 30, 2009, that transpired due to the court's scheduling error. As the state sees it, that period was too brief to compromise defendant's statutory right. Defendant rejoins that the entire 19-month period of delay attributable to the state was either unexplained or unreasonable, and, thus, the trial court erred by denying his motion.

A delay of 19 months to which the defendant did not consent exceeds expectations for bringing a case of this type to trial. *See State v. McCrory*, 201 Or App 663, 667, 120 P3d 495 (2005) (net delay of 20 months in misdemeanor prosecution exceeded reasonable expectations). Accordingly, we will examine "all the attendant circumstances," *Johnson*, 339 Or at 88, to determine whether that delay was unreasonable. "Attendant circumstances" include the reasons for the delay. *State v. Adams*, 339 Or 104, 110, 116 P3d 898 (2005). "There is no precise formula for determining whether a particular delay is reasonable." *State v. Myers*, 225 Or App 666, 674, 202 P3d 238, *rev den*, 346 Or 184 (2009). Generally, "the acceptability of the total delay in a case is influenced by the extent to which it is justified. The longer the total delay is, the shorter any unjustified portion may be." *Id.* at 677.

With those guidelines in mind, we first consider the period between September 26, 2008, when the information was filed, and November 5, 2008, when the court held its first status conference. In the interim, defendant was arraigned on October 1. Although there is no detailed explanation for it in the record, there appears to be nothing unreasonable about a 40-day interval between the commencement of a misdemeanor case and the setting of a first status conference after arraignment.

We turn to the period between January 30, 2009 and June 30, 2009, which, because it occurred due to the court's own scheduling error, was the next interval of delay attributable to the state. *See State v. Brunoe*, 204 Or App 749, 754, 131 P3d 743, *rev den*, 341 Or 245 (2006). Although the trial court explained that the delay was the result of its own scheduling error, neither the court nor the state gave a satisfactory reason for why that error occurred, and, thus, we cannot conclude that it was reasonable. *Cf. State v. Ton*, 237 Or App 447, 453, 241 P3d 309 (2010) (eight months of unexplained delay was unreasonable where the delay occurred because the case "sort of slip[ped] through the cracks").

After the June 30, 2009, hearing, defendant was given a trial date of September 16, 2009. On August 13, 2009, the state informed the court that one of its witnesses would not be available on that date, and the court set the case over to October 28, 2009. That period of delay was reasonable because it was "the product of the type of scheduling issues that courts and litigants face regularly— delays due to scheduling conflicts by the courts and counsel, the unavailability of witnesses[.]" *Allen*, 205 Or App at 228.

On November 12, 2009, the state requested a date for a hearing of its *Machuca* motion and the court set that hearing for November 24, 2009. Those 12 days of delay were thus attributable to the state, and we conclude that that period also was reasonable for the reasons set out in *Allen. Id.*

The next significant period of delay that was attributable to the state occurred between November 24, 2009 and March 3, 2010, as a result of the trial court's decision to postpone the case pending the Supreme Court's decision in *Machuca*. That period was attributable to the state because

defendant did not consent to it. Although defendant did not object to the state's suggestion, that "lack of objection is just (and only) that: a lack of objection. It convey[ed] no message that the defendant either join[ed] in the motion or waive[d] any rights that he ha[d] that [were] affected by the motion." *Adams*, 339 Or at 109. We nonetheless conclude that that period of delay, standing alone, was reasonable. As the trial court noted, *Machuca* was expected to dispose of a hotly contested issue in this case, and the state likely would have taken an interlocutory appeal from any adverse ruling by the trial court that would have been premised on this court's decision in *Machuca*. Moreover, the trial court and the parties recognized that *Machuca* was under "fast track" review at the Supreme Court and, thus, it was likely that that case would be decided in less time than it would take for a state's appeal of an adverse ruling in this case. In light of those attendant circumstances, we conclude that that period of delay was reasonable.

The next period of delay attributable to the state was the period between March 3, 2010 and May 5, 2010. The purpose of the March 3 hearing was to determine the status of the Supreme Court's review in *Machuca* and to set a trial date if the Supreme Court had issued a decision in that case. Those things happened at the March 3 hearing and, as noted, defendant agreed to a new trial date of May 5. That process and period of delay, like the process and period of delay that preceded it, were reasonable.

We turn, then, to the final period of significant delay, between May 5, 2010 and August 13, 2010, that was occasioned by the court's need to assemble and manage a large pool of prospective jurors for a death penalty case. Defendant argues that, "based on the evidence in the record, a small portion of the delay was justified by the need to select a jury *** but most of this delay was unexplained." We disagree. As noted, on May 3, defendant informed the court that he was ready for trial, but the court explained that the case needed to be reset because of the logistical demands of a pending death penalty case. Defendant asked the court not to schedule trial on a Wednesday, and the court suggested June 22. The state asked if it could be set after July 2, and the court suggested August 17, 2010. Thus, the

ultimate reasons for setting the case for trial on August 17, 2010, and not earlier, were that defendant was not available on Wednesdays and the state requested the trial take place after July 2. Given those circumstances, which bespeak of the ordinary give and take of trial scheduling that we countenanced in *Allen*, it was reasonable for the court to select the trial date that it did.

To recap, we conclude that, of the 19 months of cumulative delay attributable to the state in this case, five months was inadequately explained and, perforce, unreasonable. We now apply the pertinent legal principles to those circumstances.

We surveyed the controlling case law in *Myers*:

"Viewed together, the cases discussed above illustrate that the acceptability of the total delay in a case is influenced by the extent to which it is justified. The longer the total delay is, the shorter any unjustified portion may be. To recapitulate: [*State v.*] *Peterson*[, 183 Or App 571, 573-74, 53 P3d 455 (2002),] involved a substantial unexplained delay (six months) but a relatively short total delay (seven months). [*State v.*] *Garcia/Jackson*[, 207 Or App at 446,] involved a longer total delay (14 months), but the unjustified portion of it was relatively short (2.5 months); thus, despite the longer total delay, the period of time in which the defendant was brought to trial was still reasonable. In [*State v.*] *Allen*[, 205 Or App at 228], both the total delay and the unjustified portion of it were, in one factual scenario, a month longer than in *Garcia/Jackson* (15 months and 3.5 months, respectively), which tipped the balance against reasonableness. In [*State v.*] *Spicer*, [222 Or App 215, 193 P3d 62 (2008)] both the total delay (17 months) and the unjustified portion of it (nearly 9 months) were longer still, again leading to the conclusion that the total delay was unreasonable. Finally, in [*State v.*] *Adams*, [339 Or at 104,] no unjustified delay was identified, but the long total delay (23 months) nevertheless led to the conclusion that the defendant was not brought to trial within a reasonable period of time."

225 Or App at 677.

As in *Myers*, the facts of this case do not neatly match those of any of the above cases. In *Myers*, we concluded that an 18-month delay that was attributable to the state

and that resulted from "the routine scheduling delays that are always present" and, later in the case, a "lack of judicial resources," was reasonable. *Id.* Like in *Myers*, the delay attributable to the state here exceeded 15 months, a limit that we have treated as a rough outer boundary of reasonableness in misdemeanor cases. *See State v. Davids*, 193 Or App 178, 183, 90 P3d 1 (2004), *aff'd*, 339 Or 96, 116 P3d 894 (2005) (observing that "the courts generally have concluded that state-caused delays to which a defendant has not consented of 15 months or more are generally unreasonable"). In addition, unlike in *Spicer*, the unjustified delay here did not constitute the majority of the total period of delay attributable to the state. Moreover, this is not a case like *State v. Hampton*, 152 Or App 742, 954 P2d 1267 (1998), in which a total delay of nearly two years consisted primarily of a 19-month delay that was caused entirely by the court's inattention to a motion that it had taken under advisement. Here, as in *Myers*, there was a continuing dialogue between the court and the parties—including numerous scheduling and status conferences—at least every five months, and, as set out above, much of the delay was the result of the kind of "routine scheduling delays that are always present." *Myers*, 225 Or App at 677.

However, under the "Standards for Timely Disposition" adopted by the Oregon Judicial Conference, "'90% of all misdemeanors, infractions and other nonfelony cases should be adjudicated * * * within 90 days from the date of arraignment, 98% within 180 days and 100% within one year, except for exceptional cases in which continuing review should occur.'" *Brunoe*, 204 Or App at 756 (quoting *State v. Emery*, 318 Or 460, 471 n 17, 869 P2d 859 (1994)).[1] Simply put, we have not found an appellate decision in which the court upheld the denial of a motion to dismiss under ORS 135.747 in a misdemeanor case where, as here, the cumulative period of delay attributable to the state exceeded 15 months and where a significant part of the delay was determined to be unreasonable. *See State v. Dobson*, 240 Or App 315, 245 P3d 704 (2010) (holding that dismissal was

---

[1] Admittedly, those standards, and, indeed, the entire statutory speedy trial framework, may be out of step with the resource management constraints that confront the Oregon judiciary in the present era.

required where overall length of prosecution was 16 months, state was responsible for 13 months of delay, and six months of that delay was due to simple neglect); *Ton*, 237 Or App at 453 (holding that dismissal was required where eight months of delay out of a total of 11.5 months attributable to the state was due to simple neglect); *cf. State v. Doak*, 235 Or App 351, 231 P3d 1181, *rev den*, 349 Or 171 (2010) (holding that dismissal was not required where entire 13-month delay attributable to state was reasonably explained); *State v. Lee*, 234 Or App 383, 391-92, 228 P3d 609, *rev den*, 348 Or 523 (2010) (17.5-month delay attributable to the state on misdemeanor offenses did not require dismissal where each portion of the delay was reasonable); *State v. Cunningham*, 232 Or App 135, 146-47, 221 P3d 165 (2009) (holding that a 15-month delay, of which four months were unexplained, was reasonable in a *felony* prosecution).

Under all the attendant circumstances in this misdemeanor case, where the relevant cumulative delay was 19 months, and a five-month portion of that delay was the product of ordinary neglect, we conclude that the delay was unreasonable under ORS 135.747. Because the delay was unreasonable, the court may allow the case to proceed if the state shows "sufficient reason" not to dismiss the indictment. *Garcia/Jackson*, 207 Or App at 444. Because nothing in the record suggests that the delay was due to any special circumstance or policy, there is no sufficient reason on this record for the court to have continued the case under ORS 135.750. Therefore, we reverse.

Reversed and remanded for entry of judgment of dismissal.