Submitted September 24, 2013, reversed and remanded for entry of judgment of dismissal June 18, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARK EUGENE BLEVINS,
*Defendant-Appellant.*

Polk County Circuit Court
09P50276; A149659

330 P3d 650

Peter Gartlan, Chief Defender, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Defendant appeals a judgment of conviction for misdemeanor driving under the influence of intoxicants (DUII), ORS 813.010, assigning error to the trial court's denial of his motion to dismiss on speedy trial grounds under *former* ORS 135.747 (2011), *repealed by* Or Laws 2013, ch 431, § 1.[1] We review for errors of law, *State v. Johnson*, 339 Or 69, 82-87, 116 P3d 879 (2005), and reverse and remand for entry of judgment of dismissal.

The procedural facts pertinent to our analysis are undisputed. In March 2009, defendant and a passenger were injured in a single-vehicle crash. On April 7, 2009, defendant was charged by information with DUII, three other misdemeanors, and a violation: assault in the fourth degree, reckless driving, recklessly endangering another person, and possession of less than one ounce of marijuana.[2] A pretrial conference was held on May 8, 2009, and defendant indicated that he would likely be filing pretrial motions. Another pretrial conference was set for May 22, 2009, and trial was set for June 9, 2009.

On May 20, 2009, defendant filed a motion to controvert and a motion to suppress evidence. The motion to suppress stated that a memorandum in support would follow. The court continued the May 22, 2009, pretrial conference, and the motions were set to be heard on June 9, 2009. Just before that hearing, however, defendant filed a supplemental motion to suppress, a memorandum in support of the motion to suppress, and a memorandum in support of the motion to controvert. The state moved to continue the hearing set for June 9, 2009, over defendant's objection. The trial

---

[1] *Former* ORS 135.747 provided:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

For the reasons explained in *State v. Straughan (A147718)*, 263 Or App 225, 231-35, 327 P3d 1172 (2014), the repeal of *former* ORS 135.747, which applies to "all criminal proceedings, regardless of whether the case is pending on or the prosecution was initiated before April 1, 2014," does not affect this appeal.

[2] The marijuana possession charge was dismissed on July 22, 2009, on the state's motion.

court granted the continuance to provide the state an opportunity to respond to defendant's additional motion and arguments, and the court set a hearing for July 1, 2009.

On June 23, 2009, defendant filed a second supplemental motion to suppress evidence, and on June 25, defendant filed a third supplemental motion to suppress evidence, raising new issues. The state moved to continue the hearing set for July 1, 2009, and defendant objected. The court granted the state's motion and directed the parties to arrange a mutually acceptable hearing date. On July 13, 2009, the court set a status conference because no new hearing date had been set. At that status conference, a hearing date for defendant's pending motions was set for August 10, 2009. Defendant then filed a fourth supplemental motion to suppress on July 16, 2009. Soon after, the state filed a response to defendant's motion to controvert and a comprehensive response to defendant's motions to suppress.

The hearing on defendant's motions began on August 10, 2009, but could not be completed in one day. The first mutually agreeable date to finish the hearing was September 25, 2009. After that date, the parties asked to submit supplemental briefing, and the court granted the parties until October 16, 2009, to do so.

On September 30, 2009, however, we issued our opinion in *State v. Machuca*, 231 Or App 232, 218 P3d 145 (2009), which affected the analysis of some of the issues raised in defendant's pending motions. Because it appeared likely that the Oregon Supreme Court would take up the case, the trial court ordered that defendant's case be held in abeyance pending action by the Supreme Court.

On February 11, 2010, the Supreme Court issued its decision in *State v. Machuca*, 347 Or 644, 227 P3d 729 (2010). That same day, the state in this case filed a supplemental memorandum addressing the decision; defendant filed his supplemental memorandum on February 17. The trial court took the matter under advisement on March 23, 2010. Over a year later, on April 14, 2011, the trial court issued a letter opinion denying defendant's motions to suppress and motion to controvert. The order was entered April 19, 2011.

On June 17, 2011, court staff scheduled a status conference for June 30, 2011. On June 21, 2011, defendant filed a motion to dismiss on speedy trial grounds under *former* ORS 135.747. The state filed its response on June 30, 2011, and a hearing was held that same day. The court issued a letter opinion on the motion on July 11, 2011. The court denied the motion, concluding that "the time period from incident to trial date is reasonable and that all delays were either necessary, or caused by defendant." The trial court made one specific determination with respect to defendant's consent: for the delay between the date of arraignment, April 16, 2009, and October 16, 2009, when defendant's motions were fully briefed, "at least half" of that delay was attributable to defendant. The court also concluded that the delay of over a year while defendant's motions were under advisement was reasonable, given (1) the complexity of the case; (2) the need for the court to review many parts of the evidentiary hearing on defendant's motions after the delay in taking the motions under advisement; and (3) the lack of support staff and the retirement of one of the Polk County judges, which caused a dramatic increase in the trial court's caseload. On August 25, 2011, defendant waived the right to a jury trial and, following a trial by stipulated facts, the court convicted defendant of DUII.

On appeal, defendant argues that the trial court erred in denying his motion to dismiss under *former* ORS 135.747. Our review under that statute proceeds in two steps. We first "determine the relevant amount of delay by subtracting from the total delay any periods of delay that defendant requested or consented to." *State v. Glushko/ Little*, 351 Or 297, 305, 266 P3d 50 (2011). Then, if the remaining period of delay is longer than to be expected to bring a defendant to trial, we determine whether that net delay is reasonable. *Id.* at 305; *Johnson*, 339 Or at 88.

With respect to postponements that defendant requested or consented to, there are three periods of delay at issue on appeal. The first is a period early in the case— the parties dispute the exact starting and ending dates— when defendant filed several pretrial motions. For that delay, defendant adopts an analysis similar to that of the trial court. Defendant looks at the period from March 14,

2009, when defendant was cited, to October 16, 2009, when the briefing on all defendant's motions was complete, and argues that each party was responsible for half that delay— 108 days. The state responds, initially, by noting that the starting point for any delay is the date when the accusatory instrument was filed, April 7, 2009; the state acknowledges that defendant did not consent to any delay from that date to the first originally scheduled trial date, June 9, 2009. The state argues, however, that by filing at least five pretrial motions between May 20, 2009 and July 16, 2009, defendant consented to a reasonable time for the parties to brief the motions and for the court to hold a hearing. Accordingly, in the state's view, defendant consented to a 129-day delay from June 9, 2009, the first trial date, to October 16, 2009, when the briefing on those motions was complete.

The state has the better view with respect to the delay up to October 16, 2009. The relevant starting point for analysis under *former* ORS 135.747 is the date defendant was "charged with a crime"—here, the date the information was filed, April 7, 2009. *See State v. Murr*, 254 Or App 456, 463, 295 P3d 122, *rev den*, 353 Or 788 (2013) (explaining that "a defendant is 'charged with a crime' for purposes of [*former*] ORS 135.747 when an accusatory instrument is filed—either a complaint that is filed as part of the citation or a separately filed complaint or information"). The state acknowledges that defendant did not consent to any delay between that date and the first trial date, June 9, 2009. Before that date, however, defendant filed a motion to suppress and motion to controvert, along with several supplemental motions. By filing those motions, which required resolution before a trial could be held, defendant applied for or consented to a postponement for some reasonable period of time for the trial court to consider and decide them. *Glushko/ Little*, 351 Or at 313-14; *State v. McGee*, 255 Or App 460, 480, 297 P3d 591, *rev den*, 354 Or 389 (2013). And 129 days was a reasonable amount of time for the state to respond and for the court to conduct a two-day evidentiary hearing, where defendant filed at least five separate motions over the span of two months, and he often filed a new motion just as the other motions were set to be heard, requiring multiple hearings to be set over.

The state next argues that, by filing pretrial motions, defendant consented to the 118-day delay caused when the court ordered that defendant's case be held in abeyance pending the Oregon Supreme Court's decision in *Machuca*. The state reasons that defendant consented to that delay because it "was a reasonable delay necessitated by defendant's motions." Defendant responds that the 118-day delay is attributable to the state because he did not consent to the court's abeyance order.

We start with the general proposition that "a defendant gives 'consent' to a delay only when the defendant expressly agrees to a postponement requested by the state or the court." *Glushko/Little*, 351 Or at 315. The state does not argue that defendant consented to the trial court's order holding the case in abeyance.[3] As noted above, however, the Supreme Court has explained that filing a pretrial motion— *i.e.*, expressly asking the court rule on a motion—can be understood as consent to a delay for the court to rule on that motion. *Id.* at 314 (discussing *State v. Crosby*, 217 Or 393, 342 P2d 831 (1959)). Put another way, "filing a motion that *necessarily entails delay* is, 'in effect,' a request for postponement for a reasonable period of time to rule on the motion." *Id.* (emphasis added; discussing *State v. Robinson*, 217 Or 612, 343 P2d 886 (1959)).

In considering the delay resulting from the trial court's abeyance order, then, the fundamental question is

---

[3] We note that the trial judge stated in a letter opinion that it was his recollection that "the attorneys and I communicated about *Machuca* soon after the Court of Appeals decision, and that we agreed that the court would hold this matter in abeyance until the Supreme Court took action. I cannot, however, find any documentation of that discussion." In a motion for reconsideration, defendant's counsel submitted an affidavit stating that he never communicated with the court about holding the case in abeyance, and, had he been consulted, counsel would have objected to such a procedure.

On appeal, defendant argues that, to the extent the trial court found, as a matter of fact, that defendant expressly agreed to hold the case in abeyance, that finding is not supported by any evidence in the record. We need not address that argument because neither the trial court nor the state on appeal rely on the trial judge's recollection to support an argument that defendant consented to the court's abeyance order. In its letter opinion, the trial court did not conclude that defendant consented to that delay; instead, the court, apparently attributing that delay to the state, assessed whether it was reasonable. And the state now argues that defendant consented to the delay caused by the abatement because it was "necessitated by defendant's [pretrial] motions," not because defendant in fact agreed to the court's decision to hold the case in abeyance.

whether defendant necessarily applied for or consented to that *kind* of delay by filing pretrial motions. We conclude that he did not. The trial court could have considered and decided defendant's motions even as *Machuca* proceeded in the appellate courts, but instead the court issued an order that the case be held in abeyance. It is true that the abeyance order would not have occurred "but for" defendant's motions, but it was nevertheless the result of an independent decision of the trial court that defendant's motions did not require. And, although holding the case in abeyance was a reasonable decision to avoid a possible interlocutory appeal, *State v. Peterson*, 252 Or App 424, 431, 287 P3d 1243 (2012), the act of filing pretrial motions does not equate to an open-ended agreement to any ensuing postponement, even if there was good reason for it. Accordingly, we conclude that the 118-day delay is not attributable to defendant.

The state finally argues that defendant consented to a portion of the 419-day delay after the Supreme Court issued its decision in *Machuca*—from February 17, 2010 to April 14, 2011—when the court had defendant's motions under advisement. The state maintains that "defendant necessarily consented to some reasonable amount of time for the court to have the issues under advisement and to write the opinion" after the parties submitted their final, post-*Machuca* briefing. The trial court concluded that 90 days, the benchmark set in ORS 1.050,[4] was appropriate time for resolution of the motions, and on appeal the state asserts that 90 days "would seem reasonable given the complexity of the motions." For the purposes of this appeal, we accept the state's formulation and attribute 90 days of delay to defendant.[5]

---

[4] ORS 1.050 provides, in part:

"Any question submitted to any judge of any court of, or any justice of the peace in, any of the courts of this state, excepting the Supreme Court and the Court of Appeals and the judges thereof, must be decided and the decision rendered within three months after submission, unless prevented by sickness or unavoidable casualty, or the time be extended by stipulation in writing signed by the counsel for the respective parties and filed with the judge before the expiration of said three months."

[5] The state argues that defendant consented to 17 additional days of delay, consisting of (1) 6 days, the time it took defendant to submit a supplemental brief after the Supreme Court's *Machuca* decision, and (2) 11 days, the time it took the trial court to resolve defendant's motion to dismiss. Because a determination as

In total, defendant consented to 236 days of the entire 870-day delay, leaving a net unconsented delay of 634 days, or just over 21 months. That period of time exceeds expectations for bringing a misdemeanor case to trial, *State v. Garcia/Jackson*, 207 Or App 438, 446, 142 P3d 501 (2006), and we therefore consider whether the delay was reasonable under *former* ORS 135.747. Because it is the state's obligation to bring a defendant to trial within a reasonable time, it is the state's burden to show the reasonableness of any delay. *State v. Bellah*, 242 Or App 73, 80, 252 P3d 357 (2011).

Although there is no precise formula for determining whether a particular delay is reasonable, we look to "the reasons for the delay, the length of the total delay attributable to the state, and the length of any portion of the delay that was unjustified." *State v. Myers*, 225 Or App 666, 674, 202 P3d 238, *rev den*, 346 Or 184 (2009). Generally, "the acceptability of the total delay in a case is influenced by the extent to which it is justified. The longer the total delay is, the shorter any unjustified portion may be." *Id.* at 677. Moreover, even if each portion of the total delay is justified, "[a]t some point, the focus must shift away from whether the various postponement requests and decisions *individually* are justifiable to whether the overall period of time to bring the defendant to trial is 'reasonable' *in toto*." *State v. Adams*, 339 Or 104, 111-12, 116 P3d 898 (2005) (emphasis in original). In *Adams*, for example, although the total delay of 23 months was justified by a lack of judicial resources, the court compared that delay with the two-year statute of limitations for the crime at issue and concluded that "a delay that roughly equals the statute of limitations for the crime at issue is too long." 339 Or at 112.

We begin with the longest individual delay in the case, from February 17, 2010 to April 14, 2011, when defendant's motions were under advisement. As noted, 90 days of that 419-day delay is attributable to defendant as a reasonable period of time for the trial court to rule on defendant's motions. We therefore consider whether it was reasonable

to those delays will not affect our disposition of this appeal, we assume, without deciding, that defendant consented to them. We therefore have added 17 days to the delay attributable to defendant, bringing the total consented delay to 236 days.

for the trial court to take an additional 329 days—nearly 11 months—to issue its decision.

The state initially points to two reasons mentioned by the trial court to justify that delay: (1) that the motions were complex; and (2) that the court had to review recordings of the evidentiary hearing, given the delay between the hearing dates and the time the matter was taken under advisement. But those considerations have already been taken into account by attributing 90 days of delay to defendant. The state itself recognizes that 90 days was a "reasonable" amount of time for the trial court to rule on the motions "given [their] complexity," and the trial court explained that, by the time it turned its attention to defendant's motions, it was able to complete its letter opinion "within a few weeks" while still attending to other matters. Thus, the record shows that the 329-day delay while the motions were pending—*i.e.*, the delay *beyond* the ordinary 90-day period that accounts for the court's consideration of the motions—was the result of the court giving attention to other matters, not the complexity of the motions or the need to review the materials.

Indeed, the trial court identified the other matters on its docket—and a corresponding lack of judicial resources to resolve those matters—as the primary reason for the delay in ruling on defendant's motions. The court described in detail that trial judges in Polk County had to take on more administrative duties to cover reductions in support staff, and the court explained that, because another trial judge had retired in August 2010, the remaining judges' caseloads dramatically increased until a new judge could be sworn in and take on a normal docket. As a result of the increased caseload, "[t]here was virtually no time * * * to devote to this case"; the court could only turn to defendant's pending motions in late March 2011, after the appointment of a new judge "reliev[ed] the pressure" on the court's crowded docket.

Those circumstances described by the trial court—specifically, the demand of other matters on a crowded docket—may be a sound reason for some period of delay in a case. *See, e.g., Peterson,* 252 Or App at 431-32 (explaining

that, where the defendant's trial "needed to be reset because of the logistical demands of a pending death penalty case," the delay was reasonable). We have recognized, for example, that it is reasonable for a trial court to delay new matters to attend to older cases or cases that warrant special priority. *See, e.g.*, *Garcia/Jackson*, 207 Or App at 447 (noting that 68-day delay caused by setover of trial date was reasonable, where one of the judges was ill and "older cases had priority"); *Myers*, 225 Or App at 673, 677 (recounting the trial court's findings that delay was caused, in part, by "prioritization of cases by age and custodial status" and ultimately concluding that that delay was reasonable).

But where the general demand of other matters on the docket is an asserted justification for taking no action in a case that has already been substantially prolonged, we have found the resulting delay unreasonable where "the record does not otherwise show why [the] defendant's case * * * was not given higher priority." *State v. Cunningham*, 232 Or App 135, 145-46, 221 P3d 165 (2009), *abrogated on other grounds by State v. Garner*, 253 Or App 64, 289 P3d 351 (2012), *rev den*, 353 Or 280 (2013) (concluding that delay of four months because trial court was "catching up" on its docket after hearing a complex criminal trial was unreasonable, where the defendant's case was already 18 months old by the time the complex trial ended). Here, we would expect that *defendant's* case be given priority in light of its age. When defendant's motions were taken under advisement after the Supreme Court issued its decision in *Machuca*, the case had been pending for just under a year. By that time, compared with other misdemeanor cases, defendant's case was an outlier: In 2010, 99.4 percent of misdemeanor cases in Polk County were resolved within a one-year time period.

Despite the age of defendant's case, the record does not explain why the trial court could not give defendant's pending motions priority over newer matters. And, as the motions remained under advisement for several additional months, beyond the two-year statute of limitations for the crimes charged, the need to rule on them only increased. Given the extreme age of defendant's case, we conclude that the general demand of other pending matters cannot justify

holding defendant's motions under advisement for nearly 11 months—an extreme delay in itself—where there is no explanation about why the trial court could not give priority to defendant's motions.

Ultimately, reasonableness under *former* ORS 135.747 requires us to weigh the total delay against any unjustified portions. As we explained in *Myers*, "[t]he longer the total delay is, the shorter any unjustified portion may be." 225 Or App at 677. In this misdemeanor case, the unconsented delay of 21 months was substantial—that delay approaches the two-year statute of limitations that serves as a general gauge for the "outer limit of reasonableness" in proceeding against a defendant in this type of case. *Adams*, 339 Or at 112. Further, even if we assume that all other periods of delay were reasonable, the unjustified delay of nearly 11 months while defendant's motions were under advisement was also significant. In misdemeanor cases, we have determined that delays beyond 15 months were unreasonable under *former* ORS 135.747, where the unjustified portion of delay was far below 11 months. *See, e.g., State v. Straughan (A147718)*, 263 Or App 225, 239-40, 327 P3d 1172 (2014) (concluding that total delay of 21 months, with nearly seven-month unjustified delay, was unreasonable); *Peterson*, 252 Or App at 433-34 (concluding that total unconsented delay of 19 months, with five months unjustified delay, was unreasonable, and explaining that no appellate decision had "upheld the denial of a motion to dismiss under [*former*] ORS 135.747 in a misdemeanor case where, as here, the cumulative period of delay attributable to the state exceeded 15 months and where a significant part of the delay was determined to be unreasonable"); *State v. Spicer*, 222 Or App 215, 193 P3d 62 (2008) (total unconsented delay of 17 months and unjustified delay of nine months unreasonable). Accordingly, we conclude that the total unconsented delay of approximately 21 months, along with a significant period of unjustified or unexplained delay approaching 11 months, was unreasonable.[6] Under *former* ORS 135.747, that delay warranted dismissal.

---

[6] Even if we assume that half of the 329-day delay was reasonable in light of the trial court's increased caseload, the unjustified delay would still be over five months. Under our cases, that unjustified delay, with a total unconsented delay of 21 months, would be unreasonable. *See, e.g., Peterson*, 252 Or App at 434.

We turn, finally, to the state's alternative argument that we "should remand for the trial court to consider whether the case should have been continued" under ORS 135.750 (2011), *amended by* Or Laws 2013, ch 431, § 2. That statute provides that, even if there is an unreasonable delay in bringing defendant to trial under *former* ORS 135.747, a trial court may exercise its discretion to continue the proceedings if "sufficient reason *** [was] shown [for] *** the action to be continued." ORS 135.750 (2011).

Remand for application of ORS 135.750 (2011) is not appropriate in this case for at least two reasons. First, in the trial court, the state made no effort to show that a continuance was appropriate under ORS 135.750 (2011). The state responded to defendant's motion to dismiss by arguing that the delay was reasonable under *former* ORS 135.747, and the trial court relied on that statute alone in ruling on the motion to dismiss. Second, even apart from the state's failure to invoke ORS 135.750 (2011), the state has failed to explain how the reasons the trial court identified as a cause for the delay—an increased caseload due to a retiring judge and a general lack of resources—are any different than the concerns that we have addressed (and that are typically addressed) under *former* ORS 135.747. *See State v. Allen*, 234 Or App 243, 257, 227 P3d 219 (2010) (explaining that "'sufficient reason' under ORS 135.750 refers to conditions or circumstances that are distinct from those commonly associated with delays triggering the docket-regulating protections of [*former*] ORS 135.747"). We therefore reject the state's argument under ORS 135.750 (2011).

Reversed and remanded for entry of judgment of dismissal.