Argued and submitted January 28, reversed and remanded for entry of judgment of dismissal April 8, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LEWIS ALLEN DRIVER,
*Defendant-Appellant.*

Klamath County Circuit Court
1002946CR, 1002410CR;
A153813 (Control), A153814

347 P3d 359

John Paul Evans, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Elizabeth Daily, Deputy Public Defender, Office of Public Defense Services.

Karla H. Ferrall, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

In this consolidated criminal appeal, defendant challenges his convictions for driving while under the influence of intoxicants (DUII), ORS 813.010. Defendant assigns error to the trial court's refusal to grant his motion to dismiss for lack of a speedy trial under *former* ORS 135.747 (2011), *repealed by* Or Laws 2013, ch 431, § 1.[1] We conclude that of the total 26.5-month delay, 20 months were attributable to the state. Defendant did not consent to those 20 months, and the total delay was unreasonable because seven months were the result of the state's unjustified delays in producing discovery. Accordingly, we reverse and remand for entry of a judgment of dismissal.

We begin by recounting the procedural history. Defendant appeared in court for arraignment on two separate DUII cases on December 15, 2010. The court set over the cases to January 10, 2011. Defendant later filed a motion for continuance and the cases were set over two weeks to January 24.

On that date, defendant appeared and requested a 30-day continuance because defense counsel was "starting our investigation" and was "going to be requesting some additional documents from the district attorney's (DA) office." At the next hearing a month later, on February 28, defense counsel informed the court that he was still awaiting discovery. The court proposed resetting the cases for the following month, on March 28, but chose April 4 after defendant indicated a desire to attend his mother's birthday celebration in California.

On April 4, defense counsel requested another reset to May 2, because he was still "awaiting some pictures and an audio from the [DA's] office * * *." Then again on May 2, the parties appeared and defense counsel informed the court that he needed an extension because he was "still awaiting

---

[1] Although the repeal of *former* ORS 135.747 applies to "all criminal proceedings, regardless of whether the case is pending on or the prosecution was initiated before April 1, 2014," Or Laws 2013, ch 431, § 4, the repeal provision does not apply to pending appeals from cases in which the trial court denied the defendant's motion to dismiss under *former* ORS 135.747. *State v. Straughan (A147718)*, 263 Or App 225, 231-35, 327 P3d 1172 (2014).

some discovery." Defense counsel informed the court that he intended to subpoena documents by the next hearing date. The court granted the extension.

The next hearing was set over for a week while defendant attended a funeral. On June 13, 2011, defense counsel again requested a setover because he had not yet received discovery. The court asked the state to "make a note of that on discovery." The state replied, "Yeah. These are not my—my files, Your Honor."

At the next hearing a month later on July 11, defendant informed the court that he had not received the requested "audio/videotapes" and that he had drafted a motion for a subpoena. He again requested another hearing date. A few days later, defendant filed an "*ex parte* motion for early production of documentary materials" in each case—including Intoxilyzer breath test results for the time span associated with his test, the police recording of the traffic stop for the first case, and pictures the officer took of the accident in the second case. In supporting declarations, defense counsel asserted that he had requested those materials on several occasions, both by e-mail or on the record, with no response from the Klamath County DA.

On August 8, 2011, the parties appeared in court again. The court refused to sign defendant's subpoena motions because it concluded that the subpoena power is for "something other than a law enforcement agency" and that the state was in possession or had control of documents held by law enforcement. Accordingly, the court expressed the belief that defendant was requesting materials that were "routine discovery" and it was odd to involve the court through a subpoena motion. At the time, defense counsel expressed concern that failing to seek a subpoena would reflect poorly if he later sought remedies for a discovery violation. The court stated that was unnecessary and instead directed defendant to file a motion to compel. The state acknowledged its obligation to provide discovery of pictures that a deputy had taken related to the crime.

The following month, on September 7, defendant filed a motion to compel discovery. The parties appeared on September 12, and the state suggested for the first time

that defendant needed to subpoena the materials he wanted because they were not in the state's control. The court responded that the state needed to respond to the motion and indicate whether the material sought was within the state's control. The state filed its response a week later and indicated that, on September 12, it had provided defense counsel with an audio and videotape of defendant's arrest and that the police report did not indicate that any photographs had been taken. The state also asserted that it had no obligation to locate all of the breath test results from September 27, 2010, between 1:00 a.m. and 1:30 a.m. because it had already provided the Intoxilyzer documents related to defendant's breath test which took place between 1:24 a.m. and 1:35 a.m.; the state contended that because it did not intend to offer the other breath tests that may have occurred during the broader window of time, and because there was no reasonable basis to conclude that other breath tests would be exculpatory for defendant, the state had no duty to locate other breath tests.

When the parties appeared again on September 26, they had reached the resolution that defendant should subpoena any remaining discovery from the Oregon State Police. Trial was set for December 14 and 15. Apparently all pending discovery disputes were thereby resolved.

The December date was postponed due to the court's unavailability, and reset for May 2 and 3. However, defendant moved to continue the May dates, which were reset for September. The court was again unavailable in September, and trial was reset for January 2013.

On December 12, 2012, defendant filed a motion to dismiss on statutory speedy trial grounds. At the subsequent hearing, defendant argued that of the 26.5-month delay from the arraignment to the date the matter was to be tried, defendant consented to or contributed to only 6.5 months of delay while the state and the court contributed to 20 months of delay. Defendant argued that the state was responsible for the seven-month period of time when trial was delayed due to defendant's lack of discovery. Defendant also contended that the court's setovers were attributable to the state. The state countered that it never requested a continuance in the

case and that it was ready for every trial date. Further, the state argued that it was not responsible for obtaining defendant's discovery from another state department because it was not defense counsel's "errand boy." Both parties submitted exhibits with detailed timelines of each hearing and the number of days' delay that was, in its view, attributable to each party. Defendant argued that, in the first case, 611 days were attributable to the state and 196 to defendant, and in the second case, 538 days were attributable to the state and 202 to defendant. The state argued that in the first case, 311 days were attributable to the state and 438 to defendant, and in the second case, 272 days were attributable to the state and 518 were attributable to defendant.

The trial court denied the motion to dismiss. In its findings, the court described the timeline of events. When discussing defendant's requests for discovery, the court repeatedly noted that defendant did not complain about the lack of discovery or the delay. The court noted that, in setting the trial dates in 2012, it "should have expedited the trial dates but did not do so." Again, the court commented that defendant had not complained of the delays. When examining whether the state committed discovery violations, the court pointed to defense counsel's attempts to obtain materials by a subpoena as evidence that defendant was aware that the evidence he sought was not within the state's control. The court stated that "it was not clear to the court" before September 2011 "what is now apparent[:] that (1) all materials in possession of the prosecutor had been provided; (2) some of the requested items simply did not exist; and (3) the [Intoxilyzer] printouts did exist, but were tied solely to [the first case], and a subpoena was likely the best means of obtaining them."

The court determined that the state did not violate discovery rules; referencing the prosecutor's statements at the September 2011 hearing, the court reasoned that the state "made clear the facts that [it] never had the documents and never intended to obtain them or use them in [its] case." Accordingly, the court concluded that the entire delay from January 11, 2011, until September 26, 2011, was attributable to defendant.

As a whole, the court concluded that under *State v. Allen*, 234 Or App 243, 227 P3d 219 (2010), it was "unreasonable not to have tried these cases within two years of their being filed." However, the court adopted the state's analysis and determined that 311 days (the first case) and 272 days (the second case) were attributable to the state, and that delay did not exceed expectations. Further, the court explained that, even if it concluded that the state's delay "exceeded expectations," the delay was reasonable under "all the attendant circumstances," which included the court's docket and a strong policy decision to prioritize in-custody felony trials.

Defendant assigns error to the trial court's denial of his motion to dismiss on statutory speedy trial grounds. In reviewing the denial of such a motion, we review for legal error the trial court's conclusion that the delay in bringing defendant to trial was reasonable under *former* ORS 135.747. *State v. Johnson*, 339 Or 69, 86, 116 P3d 879 (2005).

*Former* ORS 135.747 provides the statutory right to a speedy criminal trial, stating:

> "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

Our analysis under that statute proceeds in two steps. First, we determine the delay that is attributable to the state, that is, delay that defendant did not request or consent to. *State v. Glushko/Little*, 351 Or 297, 305, 266 P3d 50 (2011).[2] A defendant only "consents" to a delay when "the defendant expressly agrees to a postponement requested by the state or the court." *Id.* at 315. Second, if the delay is longer than "ordinarily would be expected," we must determine whether the delay is reasonable. *Johnson*, 339 Or at 88. "We look to 'the reasons for the delay, the length of the total delay attributable to the state, and the length of any portion of the delay that was unjustified.'" *State v. Wendt*, 268 Or App 85, 96,

---

[2] The "clock" computing the amount of delay begins with the indictment or accusatory instrument, *Johnson*, 339 Or at 93, and ends with the date of trial. *State v. Davis*, 236 Or App 99, 107-08, 237 P3d 835 (2010).

341 P3d 893 (2014) (quoting *State v. Myers*, 225 Or App 666, 674, 202 P3d 238 (2009)).

Whether the total delay in a case is acceptable is influenced by the extent to which it is justified—"[t]he longer the total delay is, the shorter any unjustified portion may be." *Myers*, 225 Or App at 677. The state has the burden to bring a defendant to trial within a reasonable time; accordingly, it is also the state's burden to show the reasonableness of any delay. *Davis*, 236 Or App at 110. "Where the state fails to show, on the record, justified reasons for a delay, the delay is deemed to be unreasonable." *Id.*

In applying those principles to a particular case, we first determine the delay that was attributable to the state. *Glushko/Little*, 351 Or at 305. We first note that, in the state's exhibit for the second case, the state mistakenly placed 40 days that it conceded were attributable to the state in the defense column. Second, the state asserted, and the trial court accepted, that in both cases, the 100 days after the January 23, 2012, pretrial conference were attributable to the defense—but the record does not support that calculation. The January 23 pretrial conference was a one-minute hearing immediately following the December trial dates that the court had set over. At that January hearing defense counsel stated, "Time to re-set trial dates," and the court set the May 2011 trial dates after clarifying a few details.[3] Without more, that is not a sufficient basis for a conclusion that defendant "expressly agrees to a postponement." Thus, that 100-day delay was attributable to the state.

Moreover, the seven-month delay from February 28, 2011 until September 27, 2011, was due to discovery delays that are attributable to the state, not to defendant. The trial court appears to have assumed that the delay could not be attributable to the state without a discovery violation, but that assumption is not a valid one. A defendant's requests for discovery do not equate to consent to any delays in providing discovery that do not constitute discovery violations. *See Glushko/Little*, 351 Or at 315 (a defendant's consent to

---

[3] There also seems to be some error in the state's calculation of the total delay—resulting in a number that is about two weeks less than the correct calculation of a total delay of 807 days in the first case and 802 days in the second case.

the state's or the court's postponement must be express). To treat such delays as the product of consent by defendant would shift the burden of bringing the case to trial within a reasonable time from the state to defendant. *See Davis*, 236 Or App at 110. Accordingly, even short of a discovery violation, the state may not ignore or avoid a defendant's repeated requests for discovery.

Here, defendant's discovery requests are referenced on the record on eight occasions from January through September 2011. Defendant concedes that the first 30-day setover was attributable to him to prepare for trial and obtain discovery. However, the record does not reflect any response from the state over the next seven occasions when defendant requested discovery; the state nowhere communicated that records did not exist or had been destroyed, were not within the state's control, or would not be used at trial. The state also failed to communicate that some of the requested discovery was not within the state's control at the July 11, 2011, and August 8, 2011, hearings at which the court and defense counsel debated whether a motion to compel or a subpoena was the proper method of obtaining discovery. Instead, the September 12, 2011, hearing was the first time that the state communicated that certain records did not exist, had been destroyed, or were not within its control. Thus, the state's failure to communicate with defendant about discovery resulted in a seven-month delay which is attributable to the state. Accordingly, we conclude that in the first case, of the 807-day total delay, 611 days were attributable to the state, and in the second case, of the 802-day delay, 614 days were attributable to the state.

A delay of over 20 months exceeds expectations for a misdemeanor DUII case. *See State v. Peterson*, 252 Or App 424, 429, 287 P3d 1243 (2012) ("A delay of 19 months to which the defendant did not consent exceeds expectations" for a misdemeanor DUII case.). We then examine the reasons for the delay to determine whether the delay was justified. Here, the seven-month discovery delay attributable to the state was unjustified—the state offered no justification other than that it was not defendant's "errand boy." Thus, we conclude that the state's unjustified delay of seven months

of the delay of over 20 months was unreasonable.[4] *See id.* at 434 (concluding that a five-month delay that was inadequately explained was unreasonable in light of the total 19-month delay); *Straughan*, 263 Or App at 239-40 (concluding that a total delay of 21 months, with nearly seven months of unjustified delay, was unreasonable). As in *Peterson,* we come to that decision in light of the fact that "we have not found an appellate decision in which the court upheld the denial of a motion to dismiss under ORS 135.747 in a misdemeanor case where, as here, the cumulative period of delay attributable to the state exceeded 15 months and where a significant part of the delay was determined to be unreasonable." 252 Or App at 433. Therefore, the trial court erred in denying defendant's motion to dismiss for statutory speedy trial violations.

Reversed and remanded for entry of judgment of dismissal.

---

[4] We do not need to reach the question of whether the remaining 13 months was justified—which included court setovers for a variety of reasons including scheduling conflicts and a prioritization of trials for in-custody defendants—because even seven months of unjustified delay was unreasonable in light of the total 20 month delay.